(March 31, 1998)

■ LIBERTY MARBLE, INC., Appellant, v ELITE STONE SETTING CORP. et al., Respondents. (Action No. 1.) ELITE STONE SETTING CORP., Respondent, v LIBERTY MARBLE, INC., et al., Appellants, et al., Defendants. (Action No. 2.) ELITE STONE SETTING CORP., Respondent, v PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Defendant, and CRISOSTOMO BATAC et al., Appellants. (Action No. 3.) [670 NYS2d 836] —Order, Supreme Court, New York County (Sheila Abdus-Salaam, J.), entered March 12, 1997, which, *inter alia*, denied that portion of the motion of appellants Liberty Marble, Inc. and Crisostomo Batac, plaintiff in Action No. 1 and defendants in Actions Nos. 2 and 3, for summary judgment dismissing the claims of Elite Stone Setting Corp., defendant in Action No. 1 and plaintiff in Actions Nos. 2 and 3, as barred by the general release executed by Elite on November 17, 1994, unanimously reversed to the extent appealed from, on the law, with costs, that portion of appellants' motion granted and Elite's claims against appellants dismissed. The Clerk is directed to enter judgment accordingly.

In these consolidated actions, Elite Stone Setting Corp. seeks to recover certain monies that it claims it is owed from Liberty Marble for work performed as a subcontractor to Liberty on various construction projects located mainly in New York City. Liberty had contracts to furnish and install marble and stone on projects such as the Warner Brothers Studio Store on East

57th Street in Manhattan. Elite, as Liberty's subcontractor, was to install exterior stone and marble supplied by Liberty.

In or about early November, 1994, Elite's principal, Frank Koone, informed Liberty's president, Crisostomo Batac, that Elite would not be able to complete its remaining subcontract work on various of the Liberty projects due to financial difficulties Elite was experiencing. Liberty had paid Elite approximately $2,000,000 for its subcontract work performed. Elite sought to be released from its subcontract agreements on the Liberty projects and to negotiate a final payment. The negotiations culminated in a November 17, 1994 agreement whereby Liberty paid Elite the sum of $101,431 in consideration for a general release signed by Elite and its principals discharging Liberty and Batac from "all actions, causes of action[ ], suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, variances, trespasses, damages, judgments, extents, executions, claims, and demands, whatsoever, in law, admiralty or equity".

Thereafter, in January 1995, Liberty commenced Action No. 1 in New York County against Elite and its individual owners for failure to pay their sub-subcontractors and materialmen. After filing a number of mechanics' liens, Elite then commenced Action No. 2 in Suffolk County, seeking to foreclose the liens against the projects' owners and their sureties and for breach of contract, unjust enrichment and fraud against Liberty and its president. Elite's Suffolk County action was then transferred to New York County and consolidated with Liberty's action.

Liberty, Batac and the other defendants in Elite's action moved for summary judgment, asserting, *inter alia*, that Elite's claims were barred by the general release. In opposition, Elite submitted only its attorney's affidavit, in which he stated, insofar as pertinent here, that the release "is null and void, because it was obtained by duress."

The IAS Court denied the motion for summary judgment, finding triable issues as to the validity of the release, including factual issues as to Elite's claim that it was the product of economic duress. The breach of contract and unjust enrichment (quasi-contract) claims were dismissed *only as against the owner-defendants* for lack of privity.

We reverse to the extent appealed from inasmuch as all of Elite's claims against Liberty and Batac should have been dismissed.

The release was effective and barred Elite's claims against them. Elite's claim of economic duress is insufficient to raise a triable issue since it is set forth in the affidavit of an attorney

without personal knowledge. Even if such affidavit would have been sufficient to oppose Liberty and Batac's prima facie showing in their motion, there were no evidentiary facts submitted that would constitute economic duress or a wrongful threat (*see, Daniel B. Grossman, Inc. v Auer's Van & Express Co.*, 173 AD2d 213; *Matter of Bruno v City of Poughkeepsie*, 121 AD2d 629, *lv denied* 69 NY2d 602 [financial pressure not enough]). Moreover, even if duress were sufficiently set forth, it is undisputed that Elite took the $101,000, thereby ratifying the release (*see, Banque Nationale de Paris v 1567 Broadway Ownership Assocs.*, 214 AD2d 359, 361, citing *Edison Stone Corp. v 42nd St. Dev. Corp.*, 145 AD2d 249, 253).

The breach of contract and unjust enrichment claims against Mr. Batac, who acted solely in his capacity as a corporate officer, should also have been dismissed for the same reasons they were dismissed as to the owners.

As to the contract claims, he was not in privity with Elite (*see, Perma Pave Contr. Corp. v Paerdegat Boat & Racquet Club*, 156 AD2d 550, 551) and, as to the unjust enrichment claims, there was no showing that Elite performed any work at his behest (*see, Heller v Kurz*, 228 AD2d 263, 264). Concur—Lerner, P. J., Sullivan, Rosenberger, Nardelli and Andrias, JJ.