■ PHILIPS SOUTH BEACH, LLC, Appellant, v ZC SPECIALTY INSURANCE COMPANY, Respondent. [867 NYS2d 386]—

Order, Supreme Court, New York County (Bernard J. Fried, J.), entered October 3, 2007, which granted defendant's motion to dismiss the complaint, affirmed, with costs.

Dismissal of the complaint was appropriate where the parties' settlement agreement, which incorporated a release of any and all claims as between the parties, bars plaintiff's claims that its surety agreements with defendant mortgage insurer were unenforceable and void as against public policy on the basis that the agreements violated article 65 of the Insurance Law. Settlement agreements are judicially favored and may not be lightly set aside, and plaintiff's allegation that the settlement agreement was procured by duress is unsupported by allegations indicating that defendant's challenged conduct constituted a wrongful threat that effectively precluded plaintiff's ability to exercise its free will (*see Matter of Guttenplan*, 222 AD2d 255, 256-257 [1995], *lv denied* 88 NY2d 812 [1996]). Instead, as correctly concluded by the motion court, defendant's challenged conduct constituted vigorous negotiation, and there was no evidence of unequal bargaining power between the parties (*see Fruchthandler v Green*, 233 AD2d 214 [1996]).

The record demonstrates that it was plaintiff's own actions, in initially refusing to pay defendant the agreed upon fees on the grounds that they were unenforceable and in prematurely seeking replacement financing, that led to the subject release. Plaintiff accepted the benefits of the settlement agreement to the extent it obtained a premature satisfaction of its existing mortgage to allow it to timely close with its new lender. This conduct constituted a ratification of the settlement agreement and undermines plaintiff's arguments that it executed the release solely out of duress, and that the agreement is void as against public policy (*see Khalid v Scagnelli*, 290 AD2d 352, 354 [2002]). Furthermore, plaintiff's failure to repudiate the settlement agreement in prompt fashion, as well as its acceptance of the benefits of the agreement, belies its claims of economic

duress (*see Mendel v Henry Phipps Plaza W., Inc.*, 27 AD3d 375, 376 [2006]). In addition, it is unclear whether New York insurance law would govern the transaction, since plaintiff is an Illinois limited liability company, defendant is incorporated in Texas, the loan closing took place in New Jersey, the reimbursement agreement is governed by Illinois law and the mortgaged property is in Florida. Concur—Friedman, J.P., Williams and Acosta, JJ.

Catterson, J., dissents in a memorandum as follows: I respectfully dissent because I believe that the motion court erred in granting defendant ZC Insurance Company's (hereinafter referred to as ZC) CPLR 3211 motion to dismiss on the basis of a release that plaintiff alleged was obtained under economic duress. In my opinion, the motion court ignored precedent and well-established legal principles in determining, without a trial or evidentiary hearing or even adequate evidentiary material, that the plaintiff's allegation of economic duress lacked merit.

In this action, the plaintiff (Philips) seeks to recover damages arising out of an alleged illegal insurance contract to which it claims it was an unwitting party. The undisputed facts of the instant case are that, in 1999, Philips sought a loan to be secured by a mortgage for a property located in Florida known as the Shore Club Hotel. ZC agreed, for a fee, to provide mortgage insurance for Philips and successfully solicited Greenwich Capital Financial Product, Inc. (hereinafter referred to as Greenwich) to loan Philips $81 million. The loan was secured by a mortgage on the property. As a condition for issuing the insurance, Philips and ZC signed a reimbursement agreement in which Philips agreed to pay ZC an annual surety premium and a termination premium. The loan was closed on or about April 30, 1999, and the maturity date for the loan was June 1, 2006.

In or about early 2001, Philips sought to borrow more funds, and negotiated with Greenwich to restructure the loan as well as negotiating with ZC to modify the reimbursement agreement. In May 2001, the loan amount was increased to $104 million. In addition, both the terms of the reimbursement agreement and the annual surety premium were modified. On or about July 1, 2002, Philips again restructured the loan.

In 2005, Philips obtained replacement financing with a closing scheduled in early November 2005. In order to secure the replacement financing, Philips was required to repay, defease or assign the $104 million mortgage loan and obtain a satisfaction on the mortgage from the lender. Greenwich advised Philips that it would not provide a satisfaction unless ZC provided

Greenwich with a notification stating that Philips had repaid all its debts to ZC. Subsequently, ZC demanded Philips pay approximately $1.5 million for the surety premium through June 1, 2006, plus approximately $5.2 million for the minimum final surety premium, and legal fee (together, hereinafter referred to as the demand payment). ZC also made it clear that it would not provide the required notification to Greenwich until Philips signed a settlement agreement containing a release. Philips eventually paid the demand payment and signed the release.

On or around March 5, 2007, Philips filed an action in the Supreme Court, New York County for recovery of damages of more than $6 million, alleging that the mortgage insurance issued by ZC and the demand payment were obtained in violation of article 65 of the Insurance Law, and that the types of mortgage insurance sold by ZC to Philips was not permitted under Insurance Law § 6503 (a) (2) and (3). In addition, Philips alleged that ZC failed to seek the requisite approval on the premium rates from the Superintendent of Insurance, as required under Insurance Law § 6504 (a). Philips further contended that both the insurance and the settlement agreement at issue were void against public policy since they are illegal contracts under sections 6503 (a) and 6504 (a) of the Insurance Law.

ZC moved to dismiss the case pursuant to CPLR 3211 (a) (1), (5) and (7). In support of the motion, ZC attached the settlement agreement containing the release signed by both parties in November 2005. In opposition, Philips filed an affidavit alleging that the release was signed under economic duress. Philips asserted that "[t]he terms and substance of the release were essentially non-negotiable. None of the agreements between plaintiff and defendant required plaintiff to deliver the release." In reply, ZC filed with the court, the 50-page reimbursement agreement, which established the contractual relationship between the parties.[1]

The court scheduled oral argument on the motion to dismiss during which ZC asserted that Philips's allegations of economic duress were conclusory, and that the burden was on Philips to

---

1. The affidavit of counsel refers to a defendant's reply memorandum of law that purportedly references this reimbursement agreement. However, that memorandum is not in the record before this Court, and in fact, nothing in the record before this Court indicates which provisions, if any, ZC relied on to counter Philips's contentions.

raise a triable issue of fact.[2] Philips's counsel then attempted to present his client's case for a finding of economic duress. Subsequently, the motion court granted ZC's motion and dismissed the case, determining that the release was valid. The court held that the settlement agreement was obtained as a result of "vigorous bargaining tactics" and not a "wrongful threat" because Philips had received and accepted benefits from the exchange of the release. Thus, the court held that the release was not acquired under economic duress, and therefore it dismissed Philips's lawsuit.

For the reasons set forth below, I believe the motion court erred in granting ZC's motion to dismiss pursuant to CPLR 3211 (a) (1), (5) and (7). While it is well-established that a general release containing language that is clear and unambiguous will protect parties from lawsuits, duress, illegality, fraud or mutual mistake are causes sufficient to invalidate it. (*Mangini v McClurg*, 24 NY2d 556, 563 [1969[.) Moreover, a motion to dismiss should be denied where duress in the procurement of the release is alleged. (*See Newin Corp. v Hartford Acc. & Indem. Co.*, 37 NY2d 211, 217 [1975]; *Gibli v Kadosh*, 279 AD2d 35, 40 [1st Dept 2000]; *see also Anger v Ford Motor Co., Dealer Dev.*, 80 AD2d 736 [4th Dept 1981] ["(w)here a complaint alleges fraud or duress in the procurement of a release . . . a motion to dismiss which is based solely on the release should be denied"].)

Here, it appears the motion court heard from both parties at oral argument as to the law on economic duress, and then summarily applied that law to facts not in evidence. The motion court determined that there was no economic duress because the settlement agreement resulted from vigorous bargaining tactics whereby Philips had accepted the benefit of ZC's permission to prematurely terminate the insurance contracts. However, that determination was made solely on the assertions of counsel and without any testimony from witnesses, nor was it based on any contractual interpretation of the reimbursement agreement. For example, there was no testimony as to how and when the vigorous bargaining occurred. Nor was there any analysis of the relevant provisions of the reimbursement agreement.[3]

In my opinion, the motion court should have utilized CPLR

---

**2.** Counsel for ZC apparently either forgot or misunderstood that the argument was on a motion to dismiss and not on a motion for summary judgment, and thus it was not incumbent on plaintiff to raise a "triable issue of fact."

**3.** For example, contrary to ZC's assertions before the motion court, certain provisions in the reimbursement agreement appear to indicate that a premature termination of the insurance contract with ZC was contemplated,

3211 (c) and reserved the issue of the validity of the release for trial. (*See Art Stone Theat. Corp. v Technical Programming & Sys. Support of Long Is.*, 157 AD2d 689 [2nd Dept 1990] [when plaintiff and defendant raise an issue on validity of a release pursuant to CPLR 3211 motion to dismiss, a separate trial should be conducted pursuant to CPLR 3211 (c) on that issue]; *see also Anger*, 80 AD2d at 736 ["(b)ecause resolution of the issue of the validity of the release may well be dispositive of the entire matter . . . an evidentiary hearing pursuant to CPLR 3211 (c) is directed"].)

Further, I believe that dismissal pursuant to CPLR 3211 (a) (7) and (a) (1) was not proper. In determining a motion which seeks to dismiss the action for failure to state a cause of action, the court must accept as true the allegations of the complaint, and give the nonmoving party (Philips) the benefit of any reasonable inference in the light most favorable to it. (*Sokoloff v Harriman Estates Dev. Corp.*, 96 NY2d 409, 414 [2001], citing *Tenuto v Lederle Labs., Div. of Am. Cyanamid Co.*, 90 NY2d 606, 609-610 [1997] and *Leon v Martinez*, 84 NY2d 83, 87-88 [1994].) To grant or deny a motion under CPLR 3211 (a) (7), the court must determine whether the facts as alleged "manifest any cause of action cognizable at law." (*Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977].) Whether a plaintiff (Philips) can ultimately establish its allegations is not taken into consideration in determining a motion to dismiss. (*Id.*; *EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005].)

In my opinion, Philips met its burden by pleading facts sufficient to support a cause of action for recovery of payment under an illegal contract (the insurance and the reimbursement agreement) pursuant to section 6408 (c) and section 6503 (a) of the Insurance Law. Indeed, ZC did not dispute any of the allegations; namely, that it is not a licensed mortgage insurer under article 65 of the New York Insurance Law or that it failed to obtain approval from the Superintendent of Insurance of the State of New York for the amount charged by it.

Finally, it appears that ZC moved pursuant to CPLR 3211 (a) (1) (dismissal on ground of documentary evidence) based on the same release it used as a ground for dismissal under CPLR 3211 (a) (5). However, utilizing the release for a section 3211 (a) (1) dismissal does not, in my opinion, help ZC either. A motion to dismiss based on documentary evidence requires that the document relied upon must definitely dispose of plaintiff's claim. (*See Farber v Breslin*, 47 AD3d 873, 876 [2nd Dept 2008]

---

and the method for calculating "discounted present value" appears to be outlined in some detail in article VII section 7.02 and article X section 10.03.

["documentary evidence utterly refutes the plaintiff's factual allegations, thereby conclusively establishing a defense as a matter of law"]; *see also* Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3211:10, at 22 [documentary evidence "apparently aims at a paper whose content is essentially undeniable and which, assuming the verity of its contents and the validity of its execution, will itself support the ground on which the motion is based"].) Clearly, in this case, such documentary evidence was not produced by ZC. The release did not refute any of Philips's allegations about the illegality of the contract, and certainly did not refute any allegation about the validity of the release itself.

I would therefore reverse the order of the motion court and reinstate the complaint. [*See* 17 Misc 3d 1109(A), 2007 NY Slip Op 51891(U).]