■ WALTER ALLEN et al., Respondents, v THE RIESE ORGANIZATION, INC., et al., Appellants. [965 NYS2d 437]—

Order, Supreme Court, New York County (Joan A. Madden, J.), entered June 29, 2012, which, to the extent appealed from, denied defendants' motion to dismiss plaintiffs' claims of employment discrimination, retaliation and hostile work environment, unanimously reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment dismissing the complaint.

In January 2009, plaintiffs were terminated from their positions as maintenance workers at defendant A.R.O. Construction Corp. Upon their discharge, plaintiffs each signed a severance agreement and release that "release[d] and forever discharge[d] [A.R.O., its corporate affiliates, officers and employees] . . . from all claims[,] causes of action, grievances, and liabilities of any nature whatsoever that [plaintiffs] may now have or could have, . . . including without limitation any claims or liabilities arising pursuant to any employment relations statute, including all claims arising under . . . the New York State Human Rights Law[ ] [and] the New York City Administrative [C]ode."

The top of each page of the release bears the notation "BEFORE SIGNING THIS AGREEMENT, YOU SHOULD CONSULT AN ATTORNEY." The release explicitly states that it is executed voluntarily by plaintiffs with a full understanding of its terms, and after having the opportunity to obtain the advice of counsel. The release further notes that the parties intended it to be a "general release" effective to the fullest extent allowable by law.

The release states that plaintiffs had sufficient time to consider the terms, and each plaintiff acknowledged: "I HAVE READ AND UNDERSTAND THIS [RELEASE], THIS [RELEASE] IS WRITTEN IN TERMS THAT I UNDERSTAND, AND I AM AWARE THAT I MAY BE GIVING UP IMPORTANT RIGHTS." The release includes a "cooling off" clause which provides that plaintiffs could revoke the release during the seven-day period after signing it. In the release, plaintiffs state that they understand their right of revocation, and that if they choose not to exercise it during the seven-day period, the release would become effective and enforceable. It is undisputed that plaintiffs never exercised their revocation rights.

As consideration for the release, plaintiffs agreed to accept a severance payment in an amount equivalent to two weeks pay. In the release, plaintiffs acknowledge that they were not entitled to the severance payment other than by reason of the release, and that the payment constituted adequate consideration. Subsequent to signing the release, plaintiffs each received the full severance payments promised.

In December 2011, approximately three years after executing the releases and accepting the severance payments, plaintiffs commenced this action against A.R.O., its corporate parent and three of its officers or employees. The complaint asserts causes of action under the state and city human rights laws for race discrimination, retaliation and hostile work environment, and a claim for intentional infliction of emotional distress. The complaint does not contain any reference to the releases plaintiffs had signed.

On February 6, 2012, defendants moved to dismiss the complaint based on the releases (CPLR 3211 [a] [5]) and documentary evidence (CPLR 3211 [a] [1]). They also sought dismissal of the emotional distress claim on statute of limitations grounds (CPLR 3211 [a] [5]). In support of their motion, defendants submitted the signed releases, and payroll records showing that plaintiffs had received the severance payments. In their opposition, dated March 29, 2012, plaintiffs admitted that they had signed the releases, but contended for the first time that they were not enforceable because they were procured by duress and fraud. Plaintiffs did not dispute that they had received the severance payments. In reply, defendants argued that plaintiffs' allegations, even if true, do not sufficiently allege fraud or duress. In the alternative, defendants argued that plaintiffs had ratified the releases by accepting the severance payments and waiting almost three years before filing this action. The motion court dismissed the emotional distress claim, but denied the remainder of defendants' motion, finding issues of fact as to the validity of the releases.[1] The court did not address the ratification argument. Defendants now appeal.

The motion court should have dismissed the complaint in its entirety. "Generally, a valid release constitutes a complete bar to an action on a claim which is the subject of the release" (*Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V.*, 17 NY3d 269, 276 [2011] [internal quotation marks omitted]). A release will not be treated lightly because it is "a jural act of high significance without which the settlement of disputes would be rendered all but impossible" (*Mangini v McClurg*, 24 NY2d 556, 563 [1969]). Where the language is clear and unambiguous, the release is binding on the parties unless it is shown that it was procured by fraud, duress, overreaching, illegality or mutual mistake (*Centro*, 17 NY3d at 276; *Johnson v Lebanese Am. Univ.*, 84 AD3d 427 [1st Dept 2011]).

Here, there is no question that plaintiffs executed general

---

1. The court's dismissal of the emotional distress claim is not a subject of this appeal.

releases that clearly and unambiguously waived all claims against defendants, and specifically claims arising under the state and city human rights laws. On appeal, plaintiffs do not dispute that the releases cover their discrimination, retaliation and hostile work environment claims, but instead contend that the releases are not enforceable because they were the product of duress and overreaching. Specifically, plaintiffs claim that their supervisor threatened that if they did not sign the releases, he would withhold their last paycheck and block their unemployment benefits.[2]

Assuming arguendo that issues of fact exist as to duress and overreaching, plaintiffs are nevertheless barred from challenging the releases on those grounds because they ratified the releases. Ratification occurs when a party accepts the benefits of a contract and fails to act promptly to repudiate it (*Dinhofer v Medical Liab. Mut. Ins. Co.*, 92 AD3d 480, 481 [1st Dept 2012], *lv denied* 19 NY3d 812 [2012]; *Philips S. Beach, LLC v ZC Specialty Ins. Co.*, 55 AD3d 493, 493-494 [1st Dept 2008], *lv denied* 12 NY3d 713 [2009]). Thus, a plaintiff cannot claim that he or she was compelled to execute an agreement under duress while simultaneously accepting the benefits of the agreement (*Foundry Capital Sarl v International Value Advisers, LLC*, 96 AD3d 620, 621 [1st Dept 2012]; *Stacom v Wunsch*, 162 AD2d 170, 171 [1st Dept 1990] ["(a) party seeking to repudiate a contract procured by duress must act promptly lest he or she be deemed to have elected to affirm it" (internal quotation marks omitted)], *lv dismissed* 77 NY2d 873 [1991]).

This Court has consistently applied the doctrine of ratification in cases involving releases. For example, in *Napolitano v City of New York* (12 AD3d 194 [1st Dept 2004]), the plaintiff employee settled disciplinary charges against him by accepting certain retirement benefits and giving the defendants a general release. We concluded that having accepted the benefits of the settlement and waiting two years before filing the complaint, the plaintiff had ratified the release and was barred from alleging duress in its execution (*id.* at 195; *see also Foundry Capital*, 96 AD3d at 620; *Khalid v Scagnelli*, 290 AD2d 352 [1st Dept 2002]; *Liberty Marble v Elite Stone Setting Corp.*, 248 AD2d 302

---

2. Plaintiffs also claim that they were fraudulently induced into signing the releases. To avoid a release based on that ground, "a party must allege every material element of fraud with specific and detailed evidence in the record sufficient to establish a prima facie case" (*Touloumis v Chalem*, 156 AD2d 230, 232-233 [1st Dept 1989]; *see Centro*, 17 NY3d at 276). Plaintiffs' affidavits, read in the light most favorable to them, fail to meet this exacting standard.

[1st Dept 1998]; *Fruchthandler v Green*, 233 AD2d 214 [1st Dept 1996]).

Here, plaintiffs' acceptance of benefits under the releases and their inordinate delay in challenging them bar any claims of alleged duress and overreaching. Plaintiffs raise no challenge to defendants' documentary evidence showing that they received payments under the releases, namely, the severance checks they were not otherwise entitled to (*see Khalid v Scagnelli*, 290 AD2d at 354 [the plaintiff's acceptance of benefits by cashing settlement check constituted ratification of the release]). Nor do plaintiffs dispute that more than three years passed between the alleged duress and the time they sought to repudiate the releases. Such a prolonged period cannot under any circumstances be considered prompt (*see Napolitano*, 12 AD3d at 195 [finding ratification after two-year delay]).

Plaintiffs' claims of duress and overreaching are further undermined by the "cooling off" provision contained in the releases. On two separate pages, plaintiffs explicitly acknowledged that they could revoke the releases at any time during the seven-day period following execution. They further acknowledged that if they did not exercise their revocation rights, the releases would be fully effective and enforceable. Plaintiffs, however, never sought to rescind the releases, reaped the benefits of the severance payments, and only challenged the releases after three years. Under these circumstances, plaintiffs are barred from asserting their duress and overreaching claims.

We have considered plaintiffs' remaining arguments and find them unavailing. Concur—Gonzalez, P.J., Mazzarelli, Renwick, Richter and Gische, JJ.

