## Sydell Group LLC v Ennismore Intl. Mgt. Ltd.

2024 NY Slip Op 30577(U)

February 22, 2024

Supreme Court, New York County

Docket Number: Index No. 651417/2023

Judge: Margaret A. Chan

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 49M

-----------------------------------------------------------------------------------X

| | |
|---|---|
| SYDELL GROUP LLC, SYDELL HOLDINGS PARTICIPATION LLC, and ANDREW ZOBLER | **INDEX NO.** 651417/2023 |
| Plaintiffs, | **MOTION DATE** 09/08/2023 |
| - v - | **MOTION SEQ. NO.** MS 003 |
| ENNISMORE INTERNATIONAL MANAGEMENT LIMITED, and SHARAN PASRICHA, | **DECISION + ORDER ON MOTION** |
| Defendants. | |

-----------------------------------------------------------------------------------X

HON. MARGARET A. CHAN:

The following e-filed documents, listed by NYSCEF document number (Motion 003) 43, 44, 45, 46, 47, 48, 49, 50, 51, 52

were read on this motion to/for                 DISMISS                              .

This action arises out of plaintiffs' plans to buy out and re-sell ownership of a corporate entity that plaintiffs co-owned with a non-party. Defendants disclosed plaintiffs' plans to that non-party in violation of a confidentiality agreement between plaintiffs and defendants. Hence, plaintiffs commenced this action against defendants alleging breach of contract, tortious interference with contract, and tortious interference with prospective business relations. Defendants move to dismiss the SAC pursuant to CPLR 3211 [a] [1] and [a] [7].

For the reasons below, the motion is granted with respect to both tortious interference claims and one theory of breach of the non-circumvention clause of the Confidentiality Agreement and denied as to the remaining theories of breach of the Confidentiality Agreement.

## Background[1]

As shown below in figure 1, the three plaintiffs sit at the top and bottom of a larger corporate family. Plaintiff Andrew Zobler is the founder and CEO of co-plaintiff Sydell Group LLC (Sydell Group), which is a "hospitality group" that "manages and develops hotel properties" around the world (NYSCEF # 38 Second Amended Complaint [SAC] ¶¶ 3, 16, 17). Zobler is also the majority owner of co-plaintiff Sydell Holdings Participation LLC (Sydell Participation) (*id.* ¶ 5). Sydell

---

[1] The following facts are drawn from the Second Amended Complaint unless otherwise stated and are assumed true for purposes of this motion.

**651417/2023   SYDELL GROUP LLC ET AL vs. ENNISMORE INTERNATIONAL MANAGEMENT LIMITED ET AL**
**Motion No.  003**

**Page 1 of 12**

1 of 12

Participation in turn owns a majority interest in and is a managing member of [non-party] SM Sydell Hotels LLC [Sydell Hotels]" (*id.* ¶ 4 [a]). Sydell Hotels is a 50% co-owner and managing member of non-party Sydell Holdings LLC (Sydell Holdings) (*id.* ¶ 4 [b]). The other 50% owner is non-party Yucaipa U.S. Hospitality Partners Holdings, Inc. (Yucaipa) (*id.*). Finally, Sydell Holdings directly owns plaintiff Sydell Group (*id.* ¶ 4 [c]).

Defendants Ennismore International Management Limited (Ennismore) and its CEO Sharan Pasricha are not part of this larger corporate family; neither is another non-party, MGM, but they both have business dealings with plaintiffs.



*Figure 1: Parties, Non-Parties, and Org. Chart. Plaintiffs depicted in red; non-parties in blue, and defendants in green.*

651417/2023   SYDELL GROUP LLC ET AL vs. ENNISMORE INTERNATIONAL MANAGEMENT
LIMITED ET AL
Motion No.  003

Page 2 of 12

2 of 12

Zobler has a significant degree of control over the various Sydell entities. Zobler controls Sydell Hotels through his majority ownership of managing member Sydell Participation. Zobler also controls both Sydell Holdings and Sydell Group as the CEO of both entities and through his control over Sydell Hotels, the managing member of Sydell Holdings (*id.* ¶ 16).

At the center of the case are the non-party co-owners of Sydell Holdings: Sydell Hotels and Yucaipa. Pursuant to the Sydell Holdings LLC Agreement/Charter ("Sydell Holdings Charter"), Sydell Hotels is the managing member and had a right to buy out all of Yucaipa's interest in Sydell Holdings at a price to be determined by arbitration (NYSCEF # 46, Sydell Holdings Charter, §§ 10.6, 10.8 [b]; NYSCEF # 44, Defts' MOL at 3). Any other transfer of interest required unanimous consent of both co-owners, Sydell Hotels and Yucaipa (*id.* § 10.1).

## Buyout Arbitration and Funding

In the Fall of 2017, Sydell Hotels asserted its buyout rights against Yucaipa ("Yucaipa Buyout" or "Buyout"), leading to arbitration over the value of Sydell Holdings (NYSCEF # 38, SAC ¶ 6). The arbitration was structured as a "baseball arbitration" in that the arbitrator would choose between either the low price proposed by Sydell Hotels or the high price proposed by Yucaipa (*id.* ¶ 10).

Meanwhile, without informing Yucaipa, Zobler began negotiating with other parties to sell off the various business interests he expected to receive from Yucaipa (*id.* ¶¶ 7, 40). Two of these parties were defendants and MGM. Defendants were allegedly interested in purchasing the stake of Sydell Group that Sydell Hotels would receive from Yucaipa (*id.* ¶¶ 3, 26). MGM, on the other hand, was interested in funding the entire buyout and potentially taking over all of Yucaipa's stakes in the businesses (*id.* ¶ 40). Defendants apparently were not initially aware that plaintiffs were also negotiating with MGM.

To facilitate these secret discussions, Zobler asked defendants to sign a confidentiality agreement ("CA") in June 2018, which was updated two months later, to add a "Non-Circumvention Clause" (*id.* ¶¶ 27-28). The Non-Circumvention Clause, at least according to Zobler, was meant to expressly prevent defendants from communicating with Yucaipa about Ennismore's interest in buying Sydell Group (*id.* ¶ 29). Zobler told Pasricha that the arbitration with Yucaipa had become "acrimonious," and "if [defendants] directly contacted Yucaipa, Yucaipa would become agitated and may retaliate against Mr. Zobler and his business interests, including by causing damages to his interests in the arbitration" (*id.*). Pasricha expressed his understanding and signed the CA on behalf of Ennismore (*id.* ¶¶ 20-30).

**651417/2023   SYDELL GROUP LLC ET AL vs. ENNISMORE INTERNATIONAL MANAGEMENT LIMITED ET AL**
**Motion No.  003**

**Page 3 of 12**

3 of 12

[* 3]

### *Relevant Provisions of the Operative Confidentiality Agreement*

The direct parties to the CA were Ennismore ("together with its affiliates") and the "Company," defined as Sydell Group "together with its affiliates" (NYSCEF # 50, also # 47, Confidentiality Agreement [CA], at paragraph preceding Recitals). Plaintiffs allege that Sydell Participation and Zobler are the intended "affiliates" under the definition of "Company" (NYSCEF # 38 ¶ 31). The CA discusses a "Potential Transaction," which is defined as defendants' "interest in investing in Company" (NYSCEF # 50, at second "Whereas" paragraph).

The CA prohibits defendants "and [their] Affiliates" from "disclos[ing] Confidential Information to any party other than to [their] Affiliates who have a need to know such Confidential Information in connection with the Potential Transaction . . . " (*id.* § 1 [b]). The CA defines "confidential information" as:

> all nonpublic information which could reasonably be expected to be regarded as being confidential and is shared with [defendants] or [defendants'] affiliates, directors, officers [etc.] . . . in connection with . . . the Potential Transaction, as well as all . . . other documents prepared by or for the Company or its Affiliates. Confidential Information expressly includes the fact that the Company is discussing with [defendants] the Potential Transaction, and any of the terms thereof.

(*Id.* § 1 [a]).

The CA also includes the aforementioned Non-Circumvention Clause, which states:

> [defendants] shall not negotiate or otherwise explore the acquisition of any direct or indirect interest in the Company, or any subsidiary or affiliate of the Company, with any person or entity other than [Sydell Participation] and its representatives, unless expressly approved in writing by [Sydell Participation]. Notwithstanding the foregoing, once the Company and [defendants] have a meeting of the minds with respect to the business terms of the Potential Transaction (as evidenced by an agreed upon term sheet or letter of intent), [defendants] may have direct communication with other holders of direct and indirect interests in the Company or any such subsidiary or affiliate.

(*Id.* § 4).

Defendants highlight both paragraphs of § 2, which relates to the "rights in and use of confidential information" (*see* NYSCEF # 44 at 11). Under § 2 [a], "Company retains all property rights in the Confidential Information," while

**651417/2023   SYDELL GROUP LLC ET AL vs. ENNISMORE INTERNATIONAL MANAGEMENT**
**LIMITED ET AL**
**Motion No.  003**

**Page 4 of 12**

4 of 12

[* 4]

defendants have no property rights in such information and are restricted in its use (NYSCEF # 50 § 2 [a]). Under § 2 [b]:

> [defendants] agree[] that, promptly upon Company's request, [defendants] and [their] Affiliates shall surrender to Company or destroy the Confidential Information and all derivatives thereof. [Defendants] acknowledge[] that all such items are the exclusive property of Company . . . .

(*Id.* § 2 [b]).

### MGM Deal and Fallout

In reliance on both defendants' interest in Sydell Group and the signed CA, plaintiffs told defendants that Zobler and Sydell Participation were also negotiating with MGM to fund the Yucaipa Buyout (NYSCEF # 38 ¶ 40). Plaintiffs allegedly told this to defendants "to inquire whether [defendants] would consider an acquisition structured like the potential deal with MGM" (*id.*). There are no allegations about defendants' response to this question.

At some point between August and November 2018, plaintiffs informed defendants that they were rejecting Ennismore's offer to purchase Sydell Group in favor of MGM's offer to fund the Yucaipa Buyout (*id.* ¶¶ 28, 43; NYSCEF # 48, Glaser Letter, at 1 [sent November 27, 2018]). Pursuant to this agreement with MGM ("the MGM Agreement"), MGM would fund the buyout at whatever price was set by the arbitrator (NYSCEF # 38 ¶¶ 46, 47). Additionally, if plaintiffs won the arbitration, MGM would pay Sydell Hotels 50% of the difference between Yucaipa's high price and Sydell Hotels' lower price, amounting to about $15 million to Sydell Hotels (*id.* ¶ 47). Plaintiffs allege that Yucaipa had no right "to receive information regarding the financing" of the buyout or any consent rights in the ultimate transaction, including the identity of MGM as the buyout financier (*id.* ¶ 45). The MGM Agreement was signed December 7, 2018 (*id.* ¶ 46).

Prior to that signing, Pasricha—allegedly upset that plaintiffs chose MGM over Ennismore—went directly to Yucaipa and revealed both defendants' negotiations with plaintiffs and plaintiffs' secret agreement with MGM to fund the buyout behind Yucaipa's back (*id.* ¶ 49). Pasricha's alleged goal was to "convince Yucaipa to replace [Sydell Hotels] and MGM with Ennismore in Sydell Holdings" (*id.*). As plaintiffs predicted in proposing the CA, Yucaipa immediately became more hostile and aggressive towards plaintiffs, filing documents in arbitration and court alleging Zobler was hiding relevant information (*id.* ¶¶ 52-54, 62, 65; NYSCEF # 48 at 1, 2-4).

Plaintiffs allege that Pasricha's actions ultimately destroyed the value of the MGM Agreement: While plaintiffs ultimately proved victorious in the arbitration,

**651417/2023 SYDELL GROUP LLC ET AL vs. ENNISMORE INTERNATIONAL MANAGEMENT LIMITED ET AL**
**Motion No. 003**

**Page 5 of 12**

5 of 12

[* 5]

Yucaipa—now armed with the identity of plaintiffs' buyout partner—used its place in the industry and connections with MGM to pressure MGM's Board and CEO into paying Yucaipa's higher price (*id.* ¶ 66). MGM ultimately agreed, costing plaintiffs the $15 million they stood to gain under the terms of the MGM Agreement (*id.* ¶¶ 66-67).

Plaintiffs, outraged at this turn of events, brought the present lawsuit on March 20, 2023 against defendants for breach of the Confidentiality Agreement, particularly the Confidentiality and Non-Circumvention clauses; tortious interference with the MGM Agreement contract; and tortious interference with plaintiffs' prospective business relations with MGM (NYSCEF # 38 ¶¶ 80, 85, 93).

Defendants now move to dismiss arguing that Yucaipa was entitled to all confidential information and that plaintiffs' claims are substantively and procedurally deficient.

## Discussion

On a motion to dismiss pursuant to CPLR 3211 [a] [7], the court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference," and "determine only whether the facts as alleged fit into any cognizable legal theory" (*Siegmund Strauss, Inc. v E. 149th Realty Corp.*, 104 AD3d 401, 403 [1st Dept 2013]). Significantly, "whether a plaintiff...can ultimately establish its allegations is not taken into consideration in determining a motion to dismiss" (*Phillips S. Beach LLC v ZC Specialty Ins. Co.*, 55 AD3d 493, 497 [1st Dept 2008], *lv denied* 12 NY3d 713 [2009])

At the same time, "[i]n those circumstances where the legal conclusions and factual allegations are flatly contradicted by documentary evidence they are not presumed to be true or accorded every favorable inference" (*Morgenthow & Latham v Bank of New York Company, Inc.*, 305 AD2d 74, 78 [1st Dept 2003] [internal citation and quotation omitted]). However, dismissal based on documentary evidence under 3211 [a] [1] may result "only when it has been shown that a material fact as claimed by the pleader is not a fact at all and no significant dispute exists regarding it' " (*Acquista v New York Life Ins. Co.*, 285 AD2d 73, 76 [1st Dept 2001] [quoting *Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977]]).

I.     Breach of Contract

Plaintiffs' claims center on the Confidentiality Clauses and the Non-Circumvention Clause in the CA. Plaintiffs proffer two separate theories of liability for breach of contract. First, defendants breached the Confidentiality Clauses by revealing to Yucaipa "Ennismore's negotiations with Sydell and Mr. Zobler's arrangement with MGM" (*see* NYSCEF # 38 ¶ 77; NYSCEF # 44 at 10, 16). Second, defendants breached the Non-Circumvention Clause by negotiating directly with

**651417/2023   SYDELL GROUP LLC ET AL vs. ENNISMORE INTERNATIONAL MANAGEMENT LIMITED ET AL**
**Motion No.  003**

**Page 6 of 12**

6 of 12

[* 6]

Yucaipa to buy out the Sydell Group's interest (NYSCEF # 38 ¶ 78; NYSCEF # 44 at 10, 16).

Defendants argue that both theories of liability fail. The alleged breach of the Confidentiality Clauses will be addressed first followed by the alleged breach of the Non-Circumvention Clause.

### Confidentiality Clauses

Defendants posit that because Yucaipa, as an "affiliate" of the Sydell Group, is actually a party to the CA and thus had a property interest in all confidential information, including information about the MGM Agreement (NYSCEF # 44 at 11). As defendants explains, the "unambiguous" terms of the CA define "the Company" as Sydell Group "together with its Affiliates" (*id.; see* NYSCEF # 50 at paragraph before Recitals). Given that plaintiffs allege Sydell Participation—an entity above Sydell Group in the corporate family—is an Affiliate included within the definition "Company," then "Company" and "Affiliate" must include all other entities above Sydell Group, including Yucaipa (NYSCEF # 44 at 11-12). And because "all Confidential Information and all derivatives thereof" are the "property" of the "Company" and the "Company retains all property rights in the Confidential Information" (*id.* quoting NYSCEF # 50 §§ 2 [b] and 2 [a], respectively), Yucaipa, as an Affiliate included within the definition of "Company," has property rights to the Confidential Information (*id.*). Thus, defendants gave Yucaipa information that Yucaipa legally owned, and therefore did not breach the CA.

This argument is flawed for multiple reasons. First, as plaintiffs point out, even assuming Yucaipa is a party to the CA, defendants gave up their right to "disclose" the confidential information to "*any* party other than to [defendants'] Affiliates" subject to certain limitations (NYSCEF # 50 § 1 [b] [emphasis added]; NYSCEF # 51, Pltf's MOL at 10-11). Merriam-Webster defines "disclose" to mean "to make known or public" (Merriam-Webster.com Dictionary, disclose [https://www.merriam-webster.com/dictionary/disclose]). Under this literal reading of the clause, defendants breached the CA when they disclosed (made it known) to Yucaipa (a "party" in the colloquial sense) that Zobler made a deal with MGM.

Moreover, the CA contemplates only one situation in which defendants can give the confidential information back to the Company (or "Affiliates" like Yucaipa), and that is under § 2 [b], which requires defendants to "surrender to Company or destroy the Confidential Information and all derivatives thereof" but only "upon Company's request" (NYSCEF # 50 § 2 [b]). Even if Yucaipa were a party to the CA, there is no allegation or documents showing that Yucaipa requested the information from defendants, and therefore disclosure was a breach of the agreement.

Defendants also misquote § 2 in arguing that Yucaipa has property rights to the information. Defendants claim § 2 [b] says "all Confidential Information and all

**651417/2023   SYDELL GROUP LLC ET AL vs. ENNISMORE INTERNATIONAL MANAGEMENT**   **Page 7 of 12**
**LIMITED ET AL**
**Motion No. 003**

derivatives thereof . . . are the . . . property of" the Company (NYSCEF # 44 at 11). Defendants read this language as giving property rights over the information to Sydell Group and all its Affiliates, including Yucaipa. But defendants' "quote" inappropriately splices together several independent thoughts to create something new. What § 2 [b] actually says is: (i) defendants "*acknowledge[]*" that all confidential information is "the exclusive property of Company," and (ii) defendants will destroy or return confidential information if the Company asks (NYSCEF # 50 § 2 [b] [emphasis added]; *see* Background section above).

Defendants' reading of § 2 also fails because neither paragraph of § 2 "gave" property rights to anyone. The only thing pertaining to property rights in § 2 [b] is that defendants acknowledge the rights belong to Company. And § 2 [a] merely states that (i) plaintiffs "retain" the property rights they already had in the information, and (ii) defendants do not acquire any "rights or licenses" to the information and will not use the information except as permitted by the CA (*id.* § 2 [a]; *see* Background section [text of § 2]). Taken as a whole, under § 2, the Company keeps the property rights it has in the confidential information, and defendants get no rights at all. Nothing here suggests new property rights were created. Put another way, the only way § 2 could "give" Yucaipa a property right is if Yucaipa already had one in the first place. Since defendants do not argue that Yucaipa already had such a right, the argument fails.

It is noted that while the CA defines "the Company" as Sydell Group "and its Affiliates," it twice contradicts this definition by expressly referring in other clauses to "the Company *or its affiliates*." These two contradictions appear in the two clauses directly at issue in this case. First, in the Confidentiality Clause, "confidential information" is defined as:

> all nonpublic information which could reasonably be expected to be regarded as being confidential . . . whether furnished directly by the Company *or through the Company's affiliates* . . . as well as . . . other documents prepared by or for the Company *or its Affiliates.*

(*Id.* § 1 [a] [emphasis added]). Second, the Non-Circumvention Clause (discussed below) states that defendants:

> shall not negotiate or otherwise explore the acquisition of any direct or indirect interest in the Company, or any subsidiary *or affiliate of the Company*, with any person or entity other than Sydell Holdings Participation LLC and its representatives.

(*Id.* § 4 [emphasis added]).

There would be no reason to specify "affiliates" in some provisions but not in others if the CA truly contemplated "the Company" as including "affiliates."

**651417/2023   SYDELL GROUP LLC ET AL vs. ENNISMORE INTERNATIONAL MANAGEMENT LIMITED ET AL**
**Motion No.  003**

**Page 8 of 12**

8 of 12

[* 8]

Because the SAC clearly alleges that the intent of the parties was to keep the information away from Yucaipa, defendants' argument—that Yucaipa is a party to the CA with property rights to the confidential information—must fail.

Defendants' second overall argument is that Yucaipa nonetheless had a right to know about the MGM deal pursuant to various provisions of the Sydell Holdings Charter. Defendants make this argument in multiple ways, but they all fail because defendants are essentially arguing that *plaintiffs* breached a duty or promise *to a non-party* (Yucaipa) by creating the CA in the first place. The question in this case is whether *defendants* (who are not subject to the Sydell Holdings Charter) breached a duty or promise *to plaintiffs* when disclosing the MGM deal to Yucaipa, particularly in light of the plain language of the CA preventing defendants from "disclos[ing]" the information "to any party" (*see* NSYCEF # 50 § 1 [b]). Arguments about plaintiffs' duties do little to answer this question and only raises questions as to Yucaipa's rights under the Sydell Holdings Charter. Defendants do not have standing to raise claims for Yucaipa.

Defendants' third argument is that plaintiffs failed to allege defendants' breach caused any damages, as Yucaipa inevitably would have learned about the MGM deal pursuant to the terms of the Sydell Holdings Charter. Again, arguments about the Sydell Holdings Charter require analysis of an agreement that binds non-parties. Thus, under these facts, this argument fails as well.

Defendants' final argument—that the allegations of breach are too vague and conclusory—also fails. Plaintiffs adequately pled that defendants breached the CA by disclosing the MGM deal to Yucaipa, causing "Yucaipa, through its owner and manager . . . [to] repeatedly contact[] MGM's CEO to pay the higher Yucaipa proposed price," negating plaintiffs' $15 million deal (NYSCEF # 38 ¶ 66). Moreover, allegations can be sufficient where "the succession of events that occurred . . . [is] too coincidental" to find as a matter of law that the there was no breach (*see CBS Corp. v Dumsday*, 268 AD2d 350, 353 [1st Dept 2000]). Even if the allegations that Yucaipa pressured MGM are too conclusory, the following chain of events is too coincidental to dismiss: (a) MGM agreed that if plaintiffs won the arbitration, MGM would pay 50% of the difference between plaintiffs' valuation and Yucaipa's valuation (NYSCEF # 38 ¶¶ 46-47); (b) plaintiffs won the arbitration (*id.* ¶ 63); (c) defendants signed an agreement promising not to disclose any confidential information gained from plaintiffs, particularly to Yucaipa (*id.* ¶¶ 29-30, 39); (d) defendants told Yucaipa about the MGM Agreement, which information was gained from plaintiffs (*id.* ¶¶ 54-56); (e) Yucaipa would not have found out about the MGM deal then if not for defendants (*id.* ¶¶ 45, 66); and (f) MGM did not pay plaintiffs 50% of the difference between plaintiffs' and Yucaipa's valuations as promised (*id.* ¶¶ 66-67). (NYSCEF # 38 ¶¶ 46-47, )

In short, plaintiffs claim for breach of the Confidentiality Clauses was adequately pled. The motion to dismiss this theory of liability is denied.

**651417/2023   SYDELL GROUP LLC ET AL vs. ENNISMORE INTERNATIONAL MANAGEMENT LIMITED ET AL**
**Motion No.  003**

Page 9 of 12

[* 9]

*Non-Circumvention Clause*

As a threshold matter, the parties seem to disagree on the scope of the Non-Circumvention Clause[2] and its effects on plaintiffs' theories of liability. Defendants posit that the clause on its face only prohibits defendants from talking to Yucaipa about *buying Sydell Group*, and that because the damages stem only from Yucaipa's knowledge of the MGM Agreement, plaintiffs failed to plead a breach (NYSCEF # 44 at 16; *see* Background section above [text of Non-Circumvention Clause]). Plaintiffs respond that the Non-Circumvention Clause was meant to prohibit *all* direct communication between defendants and Yucaipa, and therefore the act of talking to Yucaipa about the MGM Agreement constitutes a breach (NYSCEF # 51 at 17).

Defendants' interpretation is the only one that is adequately supported. Defendants are correct that plaintiffs do not plead any damages stemming solely from the negotiations between Yucaipa and defendants about a possible purchase of Sydell Group, divorced from the revelation of the MGM Agreement (*id.* at 16). To the extent that plaintiffs may be asserting that theory, it is dismissed.

Plaintiffs argue that the Non-Circumvention Clause more broadly covers all direct communication between Yucaipa and defendants, as evidenced by Zobler's discussions with defendants (*id.* at 17-18). But implicit in this argument, which relies on extrinsic evidence, is that the Non-Circumvention Clause is ambiguous (*Schron*, 20 NY3d at 436 ["evidence outside the four corners of the document is admissible only if a court finds an ambiguity in the contract"]). Plaintiffs have not pointed to any ambiguity in the Non-Circumvention Clause that would allow them to introduce extrinsic evidence, and therefore this argument must fail.

In sum, plaintiffs' theory of liability with respect to the breach of the Non-Circumvention Clause is dismissed.

II.     Tortious Interference Claims

Defendants argue that both the tortious interference with contract and the tortious interference with prospective business relations claims should be dismissed because (i) they are duplicative of the breach of contract claim; (ii) they are barred by the statute of limitations; and (iii) plaintiffs failed to allege defendants had any direct contact with MGM, which defendants argue is a necessary component of both kinds of tortious interference. Regarding tortious interference with contract alone,

---

[2] The Non-Circumvention Clause states: Defendants "shall not negotiate or otherwise explore the acquisition of any direct or indirect interest in the Company, or any subsidiary or affiliate of the Company, with any person or entity other than Sydell Holdings Participation LLC and its representatives." (NYSCEF # 50 § 2 [b])

**651417/2023   SYDELL GROUP LLC ET AL vs. ENNISMORE INTERNATIONAL MANAGEMENT**                      **Page 10 of 12**
**LIMITED ET AL**
**Motion No.  003**

10 of 12

defendants argue the SAC pled that the MGM Agreement was not in effect at the time of defendants' alleged tortious conduct. As for tortious interference with prospective business relations, defendants argue plaintiffs failed to allege any wrongful conduct that would rise to the level of an independent crime or tort, one of the elements of the claim.

Defendants are correct on the first point: both tortious interference claims must be dismissed as duplicative of the breach of contract claim. Dismissal is appropriate where "[t]he parties' rights and obligations respecting the matter in dispute are governed by their contract and the purported claim for tortious interference . . . does not more than restate plaintiffs' claim for contract breach" (*Allerand, LLC v 233 E. 18th St. Co., L.L.C.*, 19 AD3d 275, 277 [1st Dept 2005]).

Here, the CA dictated the entire relationship between the parties—plaintiffs gave defendants confidential information, and defendants promised not to reveal it to anyone including and especially Yucaipa (NYSCEF # 38 ¶¶ 30-37). Plaintiffs' breach of contract claim is based on defendants disclosing the MGM Agreement (confidential information) to Yucaipa (*id.* ¶ 77). The tortious interference claims similarly allege that defendants "breach[ed] the non-disclosure and non-circumvention provisions of the Confidentiality Agreement and then communicat[ed] confidential information to Yucaipa," specifically about the MGM Agreement (*id.* ¶¶ 83, 89). In other words, the tortious interference claims merely "restate plaintiffs' claim for contract breach" (*see Allerand*, 19 AD3d at 277).

The tortious interference with contract claim must also be dismissed for the additional reason that the SAC fails to allege a valid contract existed at the time of defendants' tortious acts. To make a claim for tortious interference with contract, plaintiff must plead, among other things, the existence of a valid contract between plaintiff and a third party (*see Oddo Asset Mgt. v Barclays Bank PLC*, 19 NY3d 584, 594 [2012]). Here, plaintiffs pled that Pasricha told Yucaipa about the MGM Agreement at some point prior to November 2018, but also that the MGM Agreement was not signed until the next month (NYSCEF # 38 ¶¶ 9, 46, 54). Defendants' Glaser letter exhibit does not prove anything to the contrary given that the letter was written by parties with, at best, third-hand knowledge of the negotiations. Even taking all reasonable inferences in plaintiffs' favor, the SAC alleges that plaintiffs and MGM were still in the process of negotiating their final Agreement when defendants went to Yucaipa. Because plaintiffs failed to allege the existence of a valid contract at the time of the alleged interference, this claim fa

Because the tortious interference claims have been dismissed, the request for punitive damages is dismissed.

## Conclusion

For the foregoing reasons, it is

[* 11]

ORDERED that the branch of defendants' motion to dismiss the First Cause of Action (Breach of Contract) of the Second Amended Complaint is granted only with respect to claims under any theory of liability that defendants violated the Non-Circumvention Clause solely through the act of negotiating the purchase of Sydell Group with Yucaipa, and denied in all other respects; and it is further

ORDERED that the branches of defendants' motion to dismiss the Second (Tortious Interference with Contract) and Third (Tortious Interference with Prospective Business Relations) Causes of Action, and the request for punitive damages are granted; and it is further

ORDERED that within 30 days of the e-filing of this order, defendant shall file an answer to the Second Amended Complaint; and it is further

ORDERED that a preliminary conference shall be held via Microsoft Teams on April 10, 2024, at 10:30 a.m. or at such other time that the parties shall set with the court's law clerk, provided, however, that the parties shall first meet and confer to determine if there is agreement to stipulate to a preliminary conference order, available at https://www.nycourts.gov/LegacyPDFS/courts/comdiv/NY/PDFs/part49-PC-Order-fillable.pdf.

This constitutes the Decision and Order of the court.

| | |
|---|---|
| **02/22/2024** | MARGARET A. CHAN, J.S.C. |
| **DATE** | **MARGARET A. CHAN, J.S.C.** |

CHECK ONE: 　☐ CASE DISPOSED　☒ NON-FINAL DISPOSITION

　　　　　　　☐ GRANTED　☐ DENIED　☒ GRANTED IN PART　☐ OTHER

APPLICATION:　☐ SETTLE ORDER　☐ SUBMIT ORDER

CHECK IF APPROPRIATE:　☐ INCLUDES TRANSFER/REASSIGN　☐ FIDUCIARY APPOINTMENT　☐ REFERENCE

651417/2023　SYDELL GROUP LLC ET AL vs. ENNISMORE INTERNATIONAL MANAGEMENT LIMITED ET AL
Motion No.  003

Page 12 of 12

12 of 12