■ In the Matter of JASON T. HOFELICH, Appellant, v KELLY A. GARROW, Respondent. [894 NYS2d 553]—

Peters, J.P.

Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of two children (born in 1999 and 2000). Although the parties consented to joint legal custody of the older child in January 2000, it is unclear from the record as to whether any custody order was entered as to the younger child. The father was sentenced to prison in October 2001, after which a number of petitions were filed by the parties and the children's paternal grandmother, culminating in an order granting the grandmother supervised visitation with the children and an order awarding the father visitation "at a minimum of once per season, at the correctional facility where he is incarcerated." By September 2005, the mother had fled with the children to Florida, and all visitation with the children ceased.

In September 2006, the father commenced a proceeding to modify custody and visitation. The mother was found to be in default* and an inquest was held, during which the father argued that there had been a change of circumstances warranting a modification due to the reversal of his conviction and dismissal of the indictment against him. Family Court (Assini, J.) agreed and, in October 2007, entered an order directing the mother to immediately appear before the court with the children, at which time it would address the rest of the relief requested by the father. Thereafter, numerous attempts by the mother's attorney to contact the mother and send her the decision and order proved unsuccessful.

In November 2007, the father filed a violation petition alleging that the mother had failed to provide him with visitation and failed to appear before Family Court with the children pursuant to the October 2007 order. The mother's attorney refused service of the petition, stating that he no longer represented the mother as he had no contact with her for some time, and thereafter successfully moved to be relieved as counsel for this reason. At a February 2008 hearing, Family Court directed the father to personally serve the mother with the October 2007 order. Despite his efforts to do so, which included hiring a process server in Florida, he was unable to accomplish personal service.

The father then moved for an order authorizing public funds to hire an investigator for the purpose of locating the mother (*see* County Law § 722-c). Prior to rendering a decision on the motion, Family Court (Taub, J.H.O.) agreed to sign a judicial subpoena directed to the United States Postal Service so the father could follow up on a post office box assigned to the

---

* The mother had retained an attorney, appeared by telephone and moved to dismiss the petition. Her motion was denied and a trial was scheduled for July 2007, at which she failed to appear.

mother in Florida, but the address obtained was ultimately determined to be a vacant lot. At a December 2008 proceeding, Family Court denied the father's motion to authorize public funds to obtain an investigator, advised the father's counsel that it was not "interested in new ideas" as to how to have the mother served and, sua sponte, entered an order dismissing the father's September 2006 petition. This appeal ensued.

We agree with the father's assertion that it was improper for Family Court to dismiss his September 2006 petition without first ordering service by publication. The Uniform Child Custody Jurisdiction and Enforcement Act permits service upon a person outside the state "in such manner as the court, upon motion, directs, including publication," if personal service or service by mail, return receipt requested, is impractical (Domestic Relations Law § 75-g [1] [c]). Here, not only did the mother abscond to Florida with the children while the father's modification petition was pending, but, once in Florida, she refused service by a process server at her home, lied to and threatened a detective agency on the telephone and subsequently provided the address of a vacant lot to the United States Postal Service. Moreover, the court had before it the affidavit of the paternal grandmother which detailed her efforts over a three-year period—including hiring private investigators and making multiple trips to Florida—to locate and serve the mother. Thus, there is ample evidence in the record that such alternative means of service were not practical (*see Dime Sav. Bank of N.Y. v Mancini*, 184 AD2d 989, 989 [1992]; *Liebeskind v Liebeskind*, 86 AD2d 207, 210-212 [1982], *affd* 58 NY2d 858 [1983]; *Carpenter v Weatherwax*, 275 App Div 980, 981 [1949]; *compare Caban v Caban*, 116 AD2d 783, 784 [1986]).

Significantly, the father cannot be faulted for a failure to specifically request service by publication. When his counsel attempted to express other suggested methods of service of the October 2007 order upon the mother, Family Court abruptly cut off counsel, stating "I'm not really interested in new ideas . . . [T]his is . . . a waste of everybody's time [and] a bad joke on the judicial system . . . [T]o use the Courts to attempt to track down somebody . . . turns this into a three ring circus[,] which is what has occurred here."

For these reasons, Family Court's order dismissing the father's September 2006 petition must be reversed and service by publication permitted. In light of our determination, we need not address the father's assertion that Family Court abused its discretion in failing to authorize public funds pursuant to County Law § 722-c to allow him to hire an investigator to

continue in his efforts to serve the mother. The parties' remaining contentions have been reviewed and found unavailing.

Rose, Lahtinen, Kavanagh and Garry, JJ., concur. Ordered that the order is reversed, on the law and the facts, without costs, and matter remitted to the Family Court of Schenectady County for further proceedings not inconsistent with this Court's decision before a different judge.