Joseph II. v Luisa JJ. (2021 NY Slip Op 06586)





Joseph II. v Luisa JJ.


2021 NY Slip Op 06586


Decided on November 24, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:November 24, 2021

532257

[*1]Joseph II., Respondent,
v
Luisa JJ., Appellant.

Calendar Date:October 19, 2021

Before: Garry, P.J., Lynch, Clark, Reynolds Fitzgerald and Colangelo, JJ.


Gregory V. Canale, Queensbury, for appellant.
O'Connell & Aronowitz, Albany (Kelly J. Mikullitz of counsel), for respondent.


Clark, J.
Appeal from an order of the Supreme Court (McKeighan, J.), entered October 6, 2020 in Washington County, which, among other things, denied defendant's cross motion to dismiss the complaint.
Plaintiff (hereinafter the husband) and defendant (hereinafter the wife) met in Italy — where the wife was born and raised — in 2003, married in 2005 and had a child together in 2013. The parties largely resided in New York during their marriage, but they also spent extended time at their second home in Italy each year. In June 2019, the parties entered into a separation and settlement agreement, wherein they agreed to, among other things, joint legal and shared physical custody of their child. The agreement provided that the child would live with the wife in Italy until July 1, 2022, that the husband would have "access to [the child] at all reasonable times" during that period and that, beginning July 1, 2022, the child would "spend January through June in Italy with [the wife] and July through December in the United States with [the husband]." In July 2019, shortly after execution of the separation and settlement agreement, the wife and the child moved to Italy, where they resided in an apartment that the parties had jointly purchased during the marriage. Between July 2019 and February 2020, the child twice visited the husband in New York — once at the end of the summer for a period of three weeks and once during the child's winter break for a period of roughly six weeks. The husband's ability to visit with the child thereafter was impeded by the emergence of COVID-19 and the ensuing pandemic.
In June 2020, the husband commenced this action for divorce, seeking, among other things, sole legal and physical custody of the child, equitable distribution of the parties' marital property, child support and maintenance. Shortly thereafter, upon the husband's motion, Supreme Court issued an order to show cause directing the wife to show cause as to why she should not be ordered to produce the child in New York and why the husband should not be granted sole legal and physical custody of the child during the pendency of the action.[FN1] The wife opposed the order to show cause and cross-moved for dismissal of the complaint,[FN2] arguing that Supreme Court lacked subject matter jurisdiction over the custody issue because New York was no longer the child's home state under the Uniform Child Custody Jurisdiction and Enforcement Act (see Domestic Relations Law art 5-A [hereinafter UCCJEA]) and, further, that she had not been properly served with the summons and complaint and that Supreme Court therefore lacked personal jurisdiction over her.
Following oral argument in August 2020, at which the wife appeared electronically and was represented by counsel, Supreme Court issued a decision from the bench, directing substituted service of the summons and complaint upon the wife and her counsel via email, declaring — upon consideration of "the totality of the circumstances[*2]" — that New York is the child's home state and ordering that the custody provisions of the separation and settlement agreement would govern during the pendency of the action. The wife thereafter joined issue, asserting certain counterclaims and affirmative defenses, including lack of personal jurisdiction and subject matter jurisdiction. Supreme Court subsequently issued a written order in conformity with its August 2020 bench decision. The wife appeals from that order, arguing that Supreme Court erred in holding that New York was the child's home state and, further, that the court improperly authorized substituted service of the summons and complaint by email.[FN3]
We first address Supreme Court's determination that New York is the child's home state under the UCCJEA and, therefore, has jurisdiction to make an initial custody determination regarding the child.[FN4] Under the UCCJEA, "a court of this state has jurisdiction to make an initial child custody determination only if" one of four statutorily prescribed situations apply (Domestic Relations Law § 76 [1]). "The UCCJEA operates like a flowchart, where, if jurisdiction is proper under a prescribed situation, the analysis need not proceed to the subsequent situations" (Matter of Mark B. v Tameka D., 183 AD3d 1038, 1039 [2020]). The first situation under which a court of this state has jurisdiction to make an initial child custody determination arises when "this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state" (Domestic Relations Law § 76 [1] [a]). A child's home state is "the state in which a child lived with a parent . . . for at least six consecutive months immediately before the commencement of a child custody proceeding" and "[a] period of temporary absence of any of the mentioned persons is part of the period" (Domestic Relations Law § 75-a [7]).
In determining whether it had jurisdiction to make an initial custody determination regarding the child, Supreme Court failed to engage in the requisite analysis, opting instead to apply an improper "totality of the circumstances" analysis. Applying the proper standard set forth in Domestic Relations Law § 76 (1) (a), it is incontrovertible that Italy, not New York, is the child's home state. The child moved to Italy with the wife in July 2019 in accordance with the separation and settlement agreement, which clearly demonstrated the parties' intention that the child live with the wife in Italy for a period of roughly three years.[FN5] The child continued to live in Italy from July 2019 through this action's commencement in June 2020. Although the child visited the husband in New York twice between July 2019 and February 2020, first for a period of about three weeks and later for a period of about six [*3]weeks, those periods merely constituted temporary absences that do not interrupt the six-month residency period required by the UCCJEA for home state status (see Domestic Relations Law § 75-a [7]; Matter of Felty v Felty, 66 AD3d 64, 70 [2009]; compare Arnold v Harari, 4 AD3d 644, 646-647 [2004]). Thus, inasmuch as the child was living in Italy with the wife for at least 10 months prior to this action's commencement, Supreme Court should have concluded that Italy was the child's home state and, consequently, that this state lacked jurisdiction to make an initial custody determination regarding the child (see Domestic Relations Law §§ 75-a [7]; 76 [1] [a]). Accordingly, Supreme Court should have granted the wife's cross motion to the extent of dismissing that portion of the husband's complaint seeking sole legal and physical custody of the child.
We next address the wife's argument that Supreme Court improperly authorized substituted service of the summons and complaint by email. Pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (20 UST 361, TIAS No. 6638 [1969] (hereinafter Hauge Convention), of which both the United States and Italy are signatories, requests for service of documents must be sent to a central authority within the receiving state, which then serves the documents "by a method prescribed by the internal law of the receiving state or by a method designated by the requester and compatible with that law" (Volkswagenwerk Aktiengesellschaft v Schlunk, 486 US 694, 699 [1988]). New York requires that, in an action for divorce, the summons and a copy of the complaint be personally served upon the defendant or, alternatively, a copy of the summons be "served on the defendant pursuant to an order directing the method of service . . . in accordance with the provisions of [CPLR 308]" (Domestic Relations Law § 232 [a]). As set forth in CPLR 308 (5), "if service is impracticable under [CPLR 308 (1), (2) and (4)]," then personal service shall be made "in such manner as the court, upon motion without notice, directs." "Although impracticality does not require a showing of actual attempts to serve parties under every method in the aforementioned provisions of CPLR 308, the movant is required to make competent showings as to actual efforts made to effect service" (Oglesby v Barragan, 135 AD3d 1215, 1216 [2016]; see Cooper-Fry v Kolket, 245 AD2d 846, 847 [1997]).
In support of his application for substituted service,[FN6] the husband failed to come forward with sufficient proof demonstrating an actual effort to effectuate service upon the wife at her residence in Italy. The only proof submitted by the husband was an email — dated August 12, 2020, more than two months after commencement of the action — from an associate at a process service company that the husband's counsel often used for service of process. The email estimated that service upon the wife in Italy in accordance with the Hague Convention [*4]would take roughly 18 to 20 weeks in total, which included "a few days" for Italian translation, 10 to 14 weeks for service and an additional two to four weeks for return of the proof of service. Although we are mindful that the COVID-19 pandemic remained an issue at the time of the August 2020 email, there was no indication in the email that the 18 to 20-week estimate was atypical or that the COVID-19 pandemic rendered service of process under the Hague Convention impracticable. Given the husband's failure to make the requisite showing of impracticability and that "a court is without power to direct expedient service pursuant to CPLR 308 (5) absent [such] a showing," Supreme Court erred in authorizing service of the summons and complaint upon the wife via substituted service (Cooper-Fry v Kolket, 245 AD2d at 847; see Oglesby v Barragan, 135 AD3d at 1216; Dime Sav. Bank of N.Y. v Mancini, 169 AD2d 964, 964-965 [1991]; cf. Caban v Caban, 116 AD2d 783, 784 [1986]; compare Safadjou v Mohammadi, 105 AD3d 1423, 1424-1425 [2013]; Matter of Hofelich v Garrow, 69 AD3d 1254, 1256 [2010]). Accordingly, Supreme Court should have denied the husband's application for substituted service. As the husband failed to effectuate proper service upon the wife within the requisite 120 days following commencement of the action (see CPLR 306-b), we grant the wife's cross motion and dismiss the complaint for lack of personal jurisdiction.
Garry, P.J., Lynch, Reynolds Fitzgerald and Colangelo, JJ., concur.
ORDERED that the order is reversed, on the law, without costs, plaintiff's motion denied, defendant's cross motion granted and complaint dismissed.



Footnotes

Footnote 1: The order to show cause stated that, "because personal service of these documents upon . . . [the wife] in Italy may take many months, and because . . . [the wife] is in frequent and regular email contact with . . . [the husband]," service of a copy of the order to show cause and the supporting papers upon the wife and the wife's counsel by electronic mail was "good and sufficient service."

Footnote 2: The record on appeal does not contain a notice of cross motion, as required by CPLR 2215. However, CPLR 2215 does not prohibit Supreme Court from entertaining a cross motion in the absence of a notice of cross motion and we discern no abuse of discretion in Supreme Court's determination to consider the cross motion here (see Wechsler v People, 13 AD3d 941, 942 [2004]; Fox Wander W. Neighborhood Assn. v Luther Forest Community Assn., 178 AD2d 871, 872 [1991]).

Footnote 3: The wife has submitted documentation indicating that, following the commencement of this action, she has commenced a custody proceeding in Italy, that an Italian court has claimed jurisdiction over the custody matter and that the Italian court has rendered a custody determination. However, any such developments do not impact this appeal, as the issue brought up for review on appeal from the October 2020 order is whether Supreme Court properly determined that New York was the child's home state at the time of this action's commencement in June 2020 (see Domestic Relations Law § 75-a [7]).

Footnote 4: Although the wife's latter argument implicates issues of personal jurisdiction, which ordinarily results in dismissal of the complaint, because personal jurisdiction over a party "is not necessary . . . to make a child custody determination" under the UCCJEA (Domestic Relations Law § 76 [3]), we address the home state issue before addressing the personal jurisdiction issue (see generally Matter of Breselor v Arciniega, 123 AD3d 1413, 1416 [2014]; Matter of Malek v Kwiatkowski, 90 AD3d 1109, 1109-1110 [2011]).

Footnote 5: Notably, the husband acknowledged in the agreement that, "once [the child] move[d] to Italy . . . , he may not be able to enforce the provisions of th[e] agreement pertaining to [the child] returning to the United States."

Footnote 6: The husband's order to show cause did not overtly seek permission to serve the wife with a copy of the summons using substituted service under CPLR 308 (5). However, during oral argument on the order to show cause, the husband's counsel referenced a prior conference with Supreme Court, wherein the court apparently requested "some evidence of the difficulty" of serving the wife in Italy. A review of the transcript of the oral argument makes clear that Supreme Court, as well as the parties, believed that the husband's application for substituted service was properly before the court.