## Yolanda Mgt. Corp. v MicroAlgo, Inc.

2025 NY Slip Op 31208(U)

April 8, 2025

Supreme Court, New York County

Docket Number: Index No. 650956/2024

Judge: Margaret A. Chan

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 49M

-----------------------------------------------------------------------X

YOLANDA MANAGEMENT CORPORATION,

                           Plaintiff,

              - v -

MICROALGO, INC.,JIE "JACK" ZHAO, MIN SHU, LI "LANCE" HE

                       Defendants.

-----------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 650956/2024 |
| MOTION DATE | 05/13/2024, 01/10/2025 |
| MOTION SEQ. NO. | 001 002 |

**DECISION + ORDER ON MOTION**

HON. MARGARET A. CHAN:

The following e-filed documents, listed by NYSCEF document number (Motion 001) 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 59

were read on this motion to/for                   **DISMISS**               .

The following e-filed documents, listed by NYSCEF document number (Motion 002) 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 53, 54, 55

were read on this motion to/for          **ALTERNATE SERVICE**       .

     This case arises from a SPAC transaction in which defendants allegedly failed to register plaintiff Yolanda Management Corp.'s shares in defendant MicroAlgo, Inc. (MicroAlgo) in breach of the parties' agreement. Only defendant MicroAlgo has fully appeared and now moves in MS 001 to dismiss the causes of action lodged against it pursuant to CPLR 3211(a)(1) and (7). Plaintiff opposes this motion. Defendant Jie "Jack" Zhao makes a limited appearance to oppose plaintiff's motion for alternative service under CPLR § 308(5) on Zhao pursuant to CPLR § 306-b and (MS002) in MS 002. The remaining individual defendants, Li "Lance" He and Min Shu have not appeared.

     For the reasons below, both motions are granted in part and denied in part.

## BACKGROUND[1]

     This case involves the SPAC transaction that created defendant MicroAlgo. A SPAC transaction is "a merger between a special-purpose acquisition company

---

[1] Unless otherwise stated, the following facts are drawn from the Second Amended Complaint and the parties' exhibits to the motions.

650956/2024  YOLANDA MANAGEMENT CORPORATION vs. MICROALGO, INC. ET AL
Motion No. 001 002

Page 1 of 11

[* 1]

(SPAC) and a private company" (*Greenland Asset Mgt. Corp. v MicroCloud Hologram, Inc.*, 83 Misc 3d 1277(A), *1 [Sup Ct, NY County 2024] [Lebovits, J.]).[2] As relevant here:

> "A private company's acquisition by a SPAC allows it to be publicly traded and to access the funds raised by the SPAC's initial public offering [IPO]. A SPAC's sponsor is usually compensated through discounted SPAC shares received before the SPAC's IPO. Those shares generally have value only if the SPAC transaction is finalized, meaning that the private company is acquired. Additionally, those shares cannot be sold unless and until the SPAC, or its successor in interest following the transaction, either registers the shares with the SEC by successfully filing a registration statement (Registration Route) or removes the restrictive legend on the shares pursuant to 17 CFR 230.44, otherwise known as SEC Rule 144 (Rule 144 Route)."

(*id.* [internal citations omitted]).

Here, plaintiff sponsored the formation of non-party Venus Acquisition Corporation (Venus), a Cayman Islands SPAC and predecessor to MicroAlgo (NYSCEF # 4, Second Amended Complaint, ¶¶ 10, 11). Plaintiff purchased ordinary shares of Venus in 2019 (Founders Shares) (NYSCEF # 19, Founder Share Subscription Agreement), and later acquired additional "private placement units" in Venus during Venus's initial public offering in 2021 (Private Units, and together with the Founders Shares, the Shares) (NYSCEF # 20, Private Placement Unit Subscription Agreement; *see also* NYSCEF # 4 ¶¶ 11, 12). Venus's "ultimate goal" was to complete a SPAC transaction with "an unspecified business or asset to be identified at a later time" (NYSCEF # 4 ¶ 10).

In August 2021, Venus entered a merger agreement with non-parties Venus Merger Sub Corporation (Venus Merger Sub), VIYI Algorithm Inc. (VIYI), and WiMi Hologram Cloud Inc. (WiMi) (NYSCEF # 4 ¶¶ 20-24). Pursuant to the agreement, Venus Merger Sub merged into VIYI, with VIYI emerging as the surviving company and as new Venus's wholly owned subsidiary (*id.* ¶¶ 20-22, 26). Venus (now New Venus) subsequently changed its name to become defendant MicroAlgo, and its ordinary shares outstanding upon the merger began trading on the NASDAQ under the symbol "MLGO" (*id.* ¶¶ 26-27). Following the merger, plaintiff owned a total 1,397,500 MicroAlgo shares, with Zhao, Min Shu and Lance holding directors' positions in MicroAlgo (*id.* ¶¶ 30-31).

---

[2] Counsels for plaintiff and MicroAlgo also represented the parties in *Greenland Asset Management* and submitted the opinion as supplemental authority (*see* NYSCEF # 26, Notice of Supplemental Authority). Counsel for MicroAlgo repeatedly refer to Yolanda as "Greenland" in their reply in support of the motion to dismiss, indicating counsel likely copied and pasted arguments from one case to another (*see* NYSCEF # 25, MTD Reply, at 8, 10-11).

[* 2]

### *Registration Rights Agreement*

Prior to the SPAC transaction, plaintiff and Venus also entered into a Registration Rights Agreement (RRA), which MicroAlgo inherited as Venus's successor in interest (*id.* ¶ 15; NYSCEF # 5, RRA). The RRA provided plaintiff with three routes to make its Shares tradable after the SPAC transaction: (1) a "Demand Registration Right" and "best efforts clause" under §§ 2.1.1 and 3.1.1; (2) a "Piggy-Back Registration Right" under § 2.2.1 (which together with Demand Registration falls into the Registration Route described in *Greenland* above); and (3) the ability to demand removal of the restrictive legends on the shares via the "Rule 144 Route" (described in *Greenland*) (*see* NYSCEF # 5 §§ 2.1.1, 2.2.1, and 3.1.1).

Specifically, § 2.1.1's Demand Registration Right allowed plaintiff to "make a written demand for registration" either at the time of or following the SPAC transaction, or "three months prior to the Release Date with respect to all other Registrable Securities" (*id.* § 2.1.1). Plaintiff was limited to making only three requests under this right (*id.*). Per § 3.1.1, MicroAlgo was required to "use its best efforts to" register plaintiff's shares "as expeditiously as possible after receipt of a request for Demand Registration" (Best Efforts Clause) (*id.* § 3.1.1). While MicroAlgo had "the right to defer any Demand Registration for up to thirty days," that right could not be used "more than once in any 365-day period" and required MicroAlgo to follow specific steps to invoke it (*id.*).

Section 2.2.1's Piggy-Back Registration Right obligated MicroAlgo to provide plaintiff with written notice at least ten days prior to filing registration for certain other shares with the SEC (*id.*, quoting § 2.2.1 ["in no event less than ten (10) days before the anticipated filing date"]). MicroAlgo must also offer plaintiff the opportunity to "piggy-back," *i.e.*, request registration of plaintiff's own shares within five days of receiving MicroAlgo's notice (*id.*).

As an alternative to registration, MicroAlgo could also facilitate a sale of the shares by removing the restrictive legend from plaintiff's stock certificates via the Rule 144 Route. While there is no specific right to legend removal in the RRA, § 5.1 requires MicroAlgo to "take such further action as [plaintiff] may reasonably request" in order to "enable [plaintiff] to sell Registrable Securities without registration" subject to the limitations of Rule 144 under the Securities Act, as amended (*id.* § 5.1; NYSCEF # 24, plaintiff's MTD Opp, at 6-7, 17).

### *MicroAlgo Fails to Make Plaintiff's Shares Tradable*

Intending to sell its MicroAlgo shares in the stock market, plaintiff made all three of its available written demands to MicroAlgo for registration of the Shares pursuant to § 2.1.1 in December 2022, January 2023, and April 2023 (*see* NYSCEF # 7, plaintiff's Registration Demand [describing written demands in December 2022 and January 2023]; *see also* NYSCEF # 4 ¶ 37 [discussing the April 19, 2023

**650956/2024  YOLANDA MANAGEMENT CORPORATION vs. MICROALGO, INC. ET AL**
**Motion No.  001 002**

**Page 3 of 11**

3 of 11

request]). However, MicroAlgo did not file the required registration statements (NYSCEF # 4 ¶ 37). There is also no allegation or evidence indicating MicroAlgo invoked its right to defer under § 3.1.1.

About eight months later on December 18, 2023, MicroAlgo filed an F-3 registration statement with the SEC to register a large number of shares (F-3) (*id.* ¶ 38). Plaintiff claims this F-3 statement "should have triggered MicroAlgo's obligation under the Piggy-Back Registration provision" under § 2.2.1, meaning MicroAlgo should have given plaintiff at least ten days-notice before filing the F-3 and an opportunity to request registration of the shares (*id.* ¶¶ 39-40). In other words, MicroAlgo should have notified plaintiff of the (then-impending) F-3 on December 8, 2023. However, MicroAlgo did not give any notice or opportunity at any point, much less within the time frame contemplated by the RRA (*id.* ¶ 40). The SEC declared the F-3 registration effective another nine days later on December 27, 2023 (NYSCEF # 9, MicroAlgo MOL, at 8).

On January 11, 2024, a little over two weeks after the SEC approved the F-3, plaintiff requested that MicroAlgo remove the restrictive legends from plaintiff's Shares under § 5.1 and the Rule 144 Route (*id.* ¶ 44; NYSCEF # 15, Zhang Aff, ¶ 7). Plaintiff made this request by having an "eminent Rule 144 attorney, Jackson L. Morris," send an opinion letter to MicroAlgo's transfer agent, non-party TranShare Corporation (TranShare) opining that legend removal here would comply with Rule 144 (NYSCEF # 4 ¶¶ 43-44; NYSCEF # 15 ¶¶ 6-8; NYSCEF # 17, Rule 144 Legal Opinion Letter). TranShare eventually accepted the opinion letter as valid, but MicroAlgo repeatedly refused to approve the legend removal (NYSCEF # 15 ¶¶ 6-11; NYSCEF # 18, TransShare email re: MicroAlgo's refusal; NYSCEF # 22, TranShare email re: validating opinion).

### *The Second Amended Complaint*

In light of MicroAlgo's failure to take any steps to un-restrict plaintiff's Shares, plaintiff filed this action on February 23, 2024. Plaintiff almost immediately amended its complaint—twice (*see* NYSCEF #s 1, 2, 4). Per the operative Second Amended Complaint, plaintiff alleges four causes of action against MicroAlgo: breach of contract for MicroAlgo's failure to use "best efforts" to register the shares as demanded per § 2.1.1 or to give required notice under the Piggy-Back Registration right in § 2.2.1 (Count 1); breach of implied contract for failure to remove the restrictive legends (Count 2); breach of covenant of good faith and fair dealing by ignoring requests to register the shares and arbitrarily refusing to remove the legends (Count 3); and conversion by "unreasonably with[olding] consent to register plaintiff's shares" and consequently interfering with plaintiff's "possessive rights and/or interests" in them (Count 4) (NYSCEF # 4 ¶¶ 52-73). Although Count 4 was asserted against the Individual Defendants also, only MicroAlgo has made a full appearance.

**650956/2024 YOLANDA MANAGEMENT CORPORATION vs. MICROALGO, INC. ET AL**
**Motion No. 001 002**

**Page 4 of 11**

4 of 11

[* 4]

Plaintiff seeks damages, injunctive relief to remove share restrictions, and recovery of legal costs (*id.* at Prayer for Relief). Plaintiff alleges that it suffered damages in excess of $13 million under each claim against MicroAlgo basing its calculation on MicroAlgo's opening and closing share prices on various dates after the SPAC transaction (*see id.* ¶¶ 49-50; NYSCEF # 23, plaintiff's Calculation of Damages). The latest dates plaintiff gives data for are December 7 and December 8, 2023 (NYSCEF # 4 ¶¶ 49-50, 58, 64, 70, 73). On December 7, MicroAlgo opened at $13.35 per share; on December 8, it opened at only $2.50 per share (*id.*).

MicroAlgo now moves to dismiss each of the four causes of action against it arguing that the Demand Registration Right was not violated because the related Best Efforts Clause lacks enforceable criteria (NYSCEF # 9 at 4-6). MicroAlgo adds that the Piggy-Back Registration Right also was not violated because the F-3 was filed after the latest dates for which plaintiff alleges it suffered damages and because the act of filing the F-3 itself gave sufficient notice under the RRA (*id.* at 6-8). MicroAlgo also argues that plaintiff's claims for implied contract, breach of the covenant of good faith and fair dealing, and conversion are duplicative of breach of contract or are not causally related to plaintiff's claimed damages (*id.* at 4, 8, 12, 14). Plaintiff opposes the motion (NYSCEF # 25).

## Discussion

MicroAlgo's Motion to Dismiss (MS 001)

On a motion to dismiss pursuant to CPLR 3211 (a)(7), the court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference," and "determine only whether the facts as alleged fit into any cognizable legal theory" (*Siegmund Strauss, Inc. v E. 149th Realty Corp.*, 104 AD3d 401, 403 [1st Dept 2013]). Significantly, "whether a plaintiff . . . can ultimately establish its allegations is not taken into consideration in determining a motion to dismiss" (*Phillips S. Beach LLC v ZC Specialty Ins. Co.*, 55 AD3d 493, 497 [1st Dept 2008], *lv denied* 12 NY3d 713 [2009])

At the same time, "[i]n those circumstances where the legal conclusions and factual allegations are flatly contradicted by documentary evidence they are not presumed to be true or accorded every favorable inference" (*Morgenthow & Latham v Bank of New York Company, Inc.*, 305 AD2d 74, 78 [1st Dept 2003] [internal citation and quotation omitted]). However, dismissal based on documentary evidence under 3211(a)(1) may result "only when it has been shown that a material fact as claimed by the pleader is not a fact at all and no significant dispute exists regarding it" (*Acquista v New York Life Ins. Co.*, 285 AD2d 73, 76 [1st Dept 2001]), quoting *Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977]). Moreover, "affidavits, which do no more than assert the inaccuracy of plaintiffs' allegations, may not be considered, in the context of a motion to dismiss, for the purpose of determining whether there is evidentiary support for the complaint ... and do not otherwise

650956/2024  YOLANDA MANAGEMENT CORPORATION vs. MICROALGO, INC. ET AL          Page 5 of 11
Motion No.  001 002

5 of 11

conclusively establish a defense to the asserted claims as a matter of law" (*Tsimerman v Janoff*, 40 AD3d 242, 242 [1st Dept 2007]).

*Count I: Breach of Contract*

Plaintiff alleges that MicroAlgo breached its obligations to use "best efforts" to register the shares "as expeditiously as possible" after plaintiff activated its Demand Registration Right and failed to give plaintiff at least ten days' notice prior to filing the F-3 statement per the Piggy-Back Registration Right. MicroAlgo counters that the Demand Registration Right is unenforceable because the Best Efforts Clause's (§ 3.1.1) requirement that MicroAlgo use "best efforts [to register the shares] as expeditiously as possible" is inherently ambiguous and lacks enforceable criteria, making compliance subject to MicroAlgo's discretion (NYSCEF # 9 at 4-5, 8-12).

When a contract includes "best efforts" terms, whether a breach occurred hinges on the enforceability of such terms. "Best efforts" clauses may be enforceable if the agreement includes sufficient context or objective criteria against which performance can be measured, even if such criteria are not explicitly stated (*see, e.g., Timberline Dev. LLC v Kronman*, 263 AD2d 175, 178 [1st Dept 2000] ["for reasonable efforts or 'best efforts' provisions to be enforceable, there must be objective criteria against which a party's efforts can be measured"]). For example, " 'when a contract does not specify time of performance, the law implies a reasonable time,' to be determined by the relevant facts and circumstances" (*Cenpark Realty, LLC v Gurin*, 204 AD3d 436, 437 [1st Dept 2022], quoting *Savasta v 470 Newport Assoc.*, 82 NY2d 763, 765 [1993]).

Here, context provides the objective criteria to determine how "expeditiously" MicroAlgo should register shares. Section 3.1.1 gives MicroAlgo the option to "defer" Demand Registration for up to only 30 days and may only do so once per 365-day period (NYSCEF # 5 § 3.1.1). The Demand Registration clause itself requires MicroAlgo to "notify all holders of Registrable Securities" of plaintiff's demand and provide them fifteen days to similarly request registration (*id.* § 2.1.1). These sections together clearly contemplate that "expeditiously as possible" means a short period of time somewhere between 15 and 30 days. The Best Efforts Clause in not so vague as to be unenforceable, as MicroAlgo contends, and MicroAlgo's alleged failure to make *any* effort to register clearly constitutes a breach (*see also Greenland*, 83 Misc 3d 1277(A) at *3 [finding a similar Best Efforts Clause viable]). The motion to dismiss Count 1 for breach of contract is denied.

*Count 2: Breach of Implied Contract*

Plaintiff next alleges that its contributions to MicroAlgo during the SPAC transaction created an implied contract to make plaintiff's shares tradable, a

650956/2024   YOLANDA MANAGEMENT CORPORATION vs. MICROALGO, INC. ET AL
Motion No.  001 002

Page 6 of 11

contract MicroAlgo breached by failing to register the shares or remove the restrictive legend.

An implied contract cannot exist where an express contract governs the same subject matter (*see Osberg v Rajaratnam*, 95 AD3d 649, 649 [1st Dept 2012] ["a contract cannot be implied where there is an express contract covering the same subject matter"]; *see also Taylor v New York Life Ins. Co.*, 324 F Supp 3d 768, 779 [SDNY 2018] ["A cause of action predicated on a theory of implied contract or quasi-contract is not viable when there is an express agreement that governs the subject matter underlying the action"]). Here, the RRA explicitly governs the subject matter—the public tradability of plaintiff's shares either by registration or legend removal – with various sections governing registration, plaintiff's rights to such registration, and the applicability of legend removal for the Rule 144 Route, there can be no implied contract. Count 2 is dismissed.

## Count 3: Breach of Implied Covenant of Good Faith and Fair Dealing

Under New York law, every contract contains an implied covenant of good faith and fair dealing, which prevents one party from acting in a way that deprives the other of the benefits of the contract (*see 511 West 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 153 [2002] ["In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance"]). However, claims based on the implied covenant must be dismissed if they are duplicative of breach of contract claims, *i.e.*, if it "arises from the same facts and seeks the same damages" as a contract claim (*Mill Financial, LLC v Gillett*, 992 NYS2d 20, 25 [1st Dept 2014], citing *Amcan Holdings, Inc. v Canadian Imperial Bank of Com.*, 70 AD3d 423, 426 [2010]).

Plaintiff's claims here concern its allegation that MicroAlgo deliberately failed to enable the tradability of plaintiff's shares either through registration or legend removal. As to registration specifically, the RRA expressly governs MicroAlgo's obligations and therefore the claim is duplicative to the extent plaintiff alleges there was any failure to register the Shares.

As for the failure to remove the restrictive legend, Rule 144 is merely "a means available to achieve the legend-removal objective" rather than a requirement of the RRA (*see Greenland*, 83 Misc 3d 1277[A], at *3). Plaintiff claims $13 million in damages based on a hypothetical sale occurring anywhere between September 22, 2023, and December 7, 2023 (*see* NYSCEF # 23). However, plaintiff did not request legend removal until January 11, 2024 (*see* NYSCEF # 15 ¶ 7; NYSCEF # 17). That is, plaintiff had already been damaged by the time it made the request. Damages obviously cannot precede the breach, and damages, in any, at a future

**650956/2024   YOLANDA MANAGEMENT CORPORATION vs. MICROALGO, INC. ET AL**
**Motion No.  001 002**

Page 7 of 11

7 of 11

time is not yet ripe. However, as it stands, Count 3 of plaintiff's complaint for breach of implied covenant of good faith and fair dealing must be dismissed. [3]

*Count 4: Conversion*

Plaintiff's final claim is for conversion, and it must be dismissed as against MicroAlgo because it is duplicative of the breach of contract claim.

"A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession" (*Colavito v New York Organ Donor Network, Inc.*, 8 NY3d 43, 49-50 [2006]). A conversion claim "cannot be predicated on a mere breach of contract" (*Yeterian v Heather Mills N.V. Inc.*, 183 AD2d 493, 494 [1st Dept 1992]; *see also Peters Griffin Woodward, Inc. v WCSC, Inc.*, 88 AD2d 883, 884 [1st Dept 1982] ["an action for conversion cannot be validly maintained where damages are merely being sought for breach of contract"]). Instead, a plaintiff must allege that defendants conduct also breached some duty "independent of the contract itself" (*Phipps Houses Services, Inc. v New York Presbyt. Hosp.*, 139 AD3d 480, 481 [1st Dept 2016]).

Here, plaintiff has a possessory right to the Shares, and MicroAlgo refused to make these shares tradable by not registering them and not removing their restrictive legend. However, the RRA governs registration and legend removal, and so, plaintiff is merely repleading its contract damages as conversion. Moreover, plaintiff is seeking the same $13 million in damages making it clear that this claim duplicative. Thus, Count 4 for conversion is dismissed as against MicroAlgo only.

## Plaintiff's Motion to Extend and for Alternative Service Against Zhao (MS 002)

Plaintiff moves to extend time for service of process on defendant Zhao pursuant to CPLR § 306-b and for alternative service under CPLR § 308(5) (NYSCEF # 27, Notice of Motion). Zhao opposes the motion only to the extent it requests alternative service. There being no objection with respect to plaintiff's request to extend time to serve and given the lengthy time that service via the Hague Convention takes, plaintiff's motion to extend is granted. However, the part of plaintiff's request for alternative service is denied.

Zhao resides in China. Plaintiff argues that personal service on him there is impracticable within the meaning of CPLR 308(5), thus, plaintiff asks to serve Zhao via the agent designated for service on MicroAlgo's parent company, WiMi—which Zhao owns a significant stake in—as well as through email at his address

---

[3] That said, MicroAlgo's argument that the SEC gives issuers "sole discretion" to remove the legend misreads the relevant rule (SEC Release No. 33-8869 [Dec. 6, 2007], 72 Fed. Reg. 71546 [Dec. 17, 2007], n 65 ["Disputes about the removal of legends are governed by state law or contractual agreements, rather than federal law"]).

650956/2024  YOLANDA MANAGEMENT CORPORATION vs. MICROALGO, INC. ET AL        Page 8 of 11
Motion No.  001 002

jack@wimiar.com (NYSCEF # 39, plaintiff's MOL at 1; NYSCEF # 38 ¶¶ 7-11, 22). Plaintiff also seeks, in its reply, to serve Zhao through his attorneys[4] who appeared for the limited purpose of challenging this motion (*see* NYSCEF # 51, plaintiff's reply, at 6-9).

As background, MicroAlgo's 2024 prospectus has acknowledged that "it may be difficult or impossible for a shareholder to effect service of process *within the United States*" on Zhao given his Chinese residence (NYSCEF # 32, MicroAlgo Prospectus Excerpts, at 51). Plaintiff claims it has tried to serve Zhao internationally via the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil or Commercial Matters (the Hague Convention) (20 UST 361, 658 UNTS 163, TIAS 10072), but has failed each time. Plaintiff claims that prior to filing the original complaint on February 23, 2024, it "hired a private investigation firm" to find Zhao's address (NYSCEF # 38, Liu Aff, ¶ 15). In March 2024, plaintiff arranged service under the Hague Convention at Zhao's last known address of "Building 61, Songping Cun, New Chuang-Wei Company, Nanshan Qu, Shenzhen, Guangdong, 518057" (the Shenzhen Address) (*id.* ¶ 17). Service was apparently unsuccessful because that address is incomplete in that it lacks a street address (*see* NYSCEF # 49, Translated Hague Convention Service Documents, at *5). Plaintiff also hired a private investigator (PI) to locate an address for Zhao in Singapore, but the investigator's search was "inconclusive" (NYSCEF # 38 ¶ 20; *see also* NYSCEF # 51, plaintiff's reply, at 5 [describing PI in Singapore]). Plaintiff did not provide the PI's report. Notably, about a month before plaintiff filed its initial complaint, Zhao publicly filed a "Schedule 13D" form with the SEC which disclosed an address for him in Beijing, China (the Beijing Address) (NYSCEF # 45, Schedule 13D dated Jan. 8, 2024 [providing Beijing Address for "Jie Zhao"]).

"It is well established that CPLR 308(5) vests a court with the discretion to direct an alternative method of service of process when it has determined that the methods set forth in CPLR 308 (1), (2) and (4) are 'impracticable' " (*Home Fed. Sav. Bank v Versace*, 252 AD2d 480, 480 [2d Dept 1998], quoting CPLR 308 [5]; *see State St. Bank & Trust Co. v Coakley,* 16 AD3d 403, 403 [2d Dept 2005]; *see also Cooper-Fry v Kolket,* 245 AD2d 846, 847 [3d Dept 1997] ["a court is without power to direct expedient service pursuant to CPLR 308 (5) absent a showing by the moving party that service under CPLR 308 (1), (2) or (4) is impracticable" (citation omitted)]; *Richards v Hedman Resources Ltd.,* 204 AD3d 1407, 1409 [4th Dept 2022] [same]).

While plaintiff's efforts to serve Zhao in Shenzhen and Singapore were unsuccessful, Zhao has disclosed his Beijing Address in a public SEC filing (*see* NYSCEF # 45 at 1), and there is no indication that service on this address is impracticable. Thus, plaintiff has a complete address now to properly serve Zhao in Beijing, China via the Hague Convention (*cf. Born to Build LLC v Saleh*, 139 AD3d 654 [2d Dept 2016] [finding international service pursuant to the Hague Convention

---

[4] Zhao is represented by the same attorneys as MicroAlgo.

650956/2024  YOLANDA MANAGEMENT CORPORATION vs. MICROALGO, INC. ET AL        Page 9 of 11
Motion No.  001 002

9 of 11

impracticable because defendant did not disclose her business or residence address in China]). Accordingly, plaintiff's request for alternative service is denied at this time.

Plaintiff argues that service through the Hague Convention is impracticable because it will take upwards of eighteen months (NYSCEF # 39 at 3). However, plaintiff's only support for the eighteen-month estimate is an online law blog that itself does not cite any statistics or facts (*see id.*), and the eighteen-month estimate is excessive in light of plaintiff's first attempt at service under the Hague Convention that took roughly six months (*see* NYSCEF # 38 ¶¶ 17, 19 [hiring process server on March 28, 2024, with attempted service on August 21, 2024]).

More importantly, the length of time required for service under the Hague Convention does not alone justify alternative service (*see, e.g., Joseph II. v Luisa JJ.*, 201 AD3d 43, 49 [3d Dept 2021] [18-20-week period for service under Hague Convention did not alone justify alternative service]; *Greenland Asset Mgt. Corp. v MicroCloud Hologram, Inc.*, 80 Misc 3d 1231(A) [Sup Ct 2023] [citing *Joseph II* for same]). Plaintiff's main citation to the contrary is a federal case from the Southern District of New York (NYSCEF # 51 at 7, quoting *Stream SICAV v Wang*, 989 F Supp 2d 264, 280 [SDNY 2013]). The District Court indeed held that the length of time for service under the Hague Convention justified serving an individual defendant through a corporation (*SICAV*, 989 F Supp 2d at 280). But unlike here, the plaintiffs in *SICAV* were a putative class, not an individual person or corporation, and so the six months needed for service under the Hague Convention posed a legitimate risk of dramatically slowing down or bifurcating an extremely complex matter (*see id.* at 268, 271, 280). It was therefore not the time alone that made service impracticable, but time along with the complexities of a class action.

By contrast, there is just one corporate plaintiff against four defendants. There is nothing so complex about this case that justifies avoiding the Hague Convention, particularly now that Zhao has directed plaintiff to his address in the publicly-filed SEC documents.

Even if alternative service was appropriate here, Zhao persuasively argues that plaintiff's proposed methods are likely not viable. Service on WiMi's designated agent in the United States is unlikely to properly establish service because that agent is only designated to accept service for specific purposes not related to this case (*see Stormhale, Inc. v Baidu.com, Inc.*, 675 F Supp 2d 373, 375 [SDNY 2009] [rejecting service on defendant's designated agent where agent was designated for securities issues only]). And service on Zhao by email is of questionable legality—at least one court has determined that "the Hague Convention prohibits service by email on defendants located in China" in light of China's objections under certain Articles of the Hague Convention (*see Smart Study Co., Ltd. v Acuteye-Us*, 620 F Supp 3d 1382, 1393-1397 [SDNY 2022]).

**650956/2024  YOLANDA MANAGEMENT CORPORATION vs. MICROALGO, INC. ET AL**
**Motion No.  001 002**

**Page 10 of 11**

10 of 11

Plaintiff's other arguments fare no better. Plaintiff complains that Zhao "has no intention of accepting service in Asia or elsewhere" (NYSCEF # 51 at 2). This is a clear misreading of the emails between counsel to the parties, as Zhao's counsel is merely asserting the uncontroversial view that defendants are entitled to adequate service (*see* NYSCEF # 44, Email Chain bt/wn Counsel, at 1 ["I do understand that it can sometimes be frustrating when defendants do not accept service, but that is not their obligation, and what is more, demanding service is their legal right. It is simply the law."]).

Plaintiff's motion for alternative service is therefore denied without prejudice and plaintiff is directed to attempt service on Zhao's Beijing address. Nothing forecloses plaintiff from bringing this motion again if service under the Hague Convention is unsuccessful.

## Conclusion

For the foregoing reasons, it is hereby

ORDERED that defendant MicroAlgo Inc.'s motion to dismiss the claims against it (MS 001) is granted to the extent that Count 2 – Breach of Implied Contract, Count 3 – Breach of Implied Covenant of Good Faith and Fair Dealing, and Count 4 – Conversion are dismissed, and denied as to Count 1 – Breach of Contract; and it is further

ORDERED that plaintiff Yolanda Management Corp.'s motion to extend time to serve and for alternative service on defendant Jie "Jack" Zhao (MS 002) is granted in part to the extent that plaintiff's deadline to serve Zhao under the Hague Convention is extended seven months from the date of entry of this order, and denied in part with respect to the request for alternative service; and it is further

ORDERED that plaintiff shall serve a copy of this Decision and Order with notice of entry on the Clerk of the Court in accordance with the procedures set forth in the Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases (accessible at the "E-Filing" page and on the court's website).

| 4/8/2025 | | | | |
|---|---|---|---|---|
| **DATE** | | | **MARGARET A. CHAN, J.S.C.** | |

| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | | GRANTED | DENIED | X GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

**650956/2024  YOLANDA MANAGEMENT CORPORATION vs. MICROALGO, INC. ET AL**
**Motion No.  001 002**

Page 11 of 11