Matter of Sarah RR. v Andrew SS. (2025 NY Slip Op 07355)

Matter of Sarah RR. v Andrew SS.

2025 NY Slip Op 07355

Decided on December 31, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 31, 2025

CV-24-1718
[*1]In the Matter of Sarah RR., Appellant,
vAndrew SS., Respondent. (And Another Related Proceeding.)

Calendar Date:November 17, 2025

Before:Garry, P.J., Clark, Aarons, McShan and Mackey, JJ.

Carolyn Snyder Lemmon, Albany, for appellant.
Theresa M. Suozzi, Saratoga Springs, for respondent.
Bradley J. Rooke, Broadalbin, attorney for the child.

Mackey, J.
Appeal from an amended order of the Family Court of Tompkins County (Scott Miller, J.), entered September 10, 2024, which, among other things, dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for custody of the parties' child.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of the subject child (born in 2020). The child was born in Massachusetts; however, the family initially lived together in Rhode Island until the parties first separated in September 2021. The mother and the child thereafter moved to Massachusetts until April 2023 when the family — the parties having previously reconciled — embarked from Mexico on an extended sailing trip. In December 2023, while the family was in Massachusetts on a break from the trip, the mother traveled with the child to the City of Ithaca, Tompkins County and did not return. Two months later, in February 2024, the mother was served with a custody petition that the father had filed in Massachusetts. Days later, the mother commenced the instant Family Ct Act article 6 proceeding in this state, seeking sole legal custody and primary physical custody, listing the child's most recent address as the family's sailing vessel. The father moved to dismiss the mother's custody petition, arguing that, "[b]ut for an eight-month international sailing trip," the child had always resided in Massachusetts or Rhode Island. The mother opposed, arguing that no state had home state jurisdiction and that the child had significant connections to New York. In the meantime, Massachusetts deferred temporary jurisdiction over the custody proceeding to Family Court, which granted the mother temporary sole legal custody and primary physical custody of the child, with parenting time to the father.
Following a fact-finding hearing on the issue of jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (see Domestic Relations Law art 5-A [hereinafter UCCJEA]), Family Court determined that Massachusetts was the child's home state and that the sailing trip constituted a temporary absence. In an amended order, the court dismissed the mother's custody petition.[FN1] The mother appeals.
The mother contends that Family Court erroneously found that Massachusetts was the child's home state under the UCCJEA and, thus, in further concluding that it lacked jurisdiction to make an initial custody determination. Pursuant to the UCCJEA, "specific and limited grounds are set forth to establish initial child custody jurisdiction, including, among others, that 'this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state' " (Arnold v Harari, 4 AD3d 644, 646 [3d Dept 2004], quoting Domestic Relations Law § 76 [1] [a]; [*2]see Joseph II. v Luisa JJ., 201 AD3d 43, 46-47 [3d Dept 2021]). To this end, Domestic Relations Law § 75-a (7) defines a home state, in relevant part, as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding," and "[a] period of temporary absence of any of the [afore]mentioned persons is part of th[is] period."
Taken together, the testimony adduced at the fact-finding hearing established that the child was born in Massachusetts and, although the child first lived in Rhode Island, the mother and child moved to Massachusetts around September 2021 after the parties separated. After the parties later reconciled, the child continued to reside in Massachusetts. In fact, prior to embarking upon their extended sailing voyage in April 2023, the parties left the family's possessions and various personal files and documentation in Massachusetts. The mother also acknowledged that she had investigated schooling and therapy options for the child in Massachusetts, in consideration of the child's emerging special needs, and that, during the sailing trip, the parties and the child returned to Massachusetts to celebrate Christmas with extended family.
Family Court did not credit the mother's testimony that the sailing trip was intended to be indefinite. Notably, the mother's later conflicting statement that the parties had been "shooting for" an April 2024 return corroborated the father's testimony that he and the mother had intended for the sailing voyage to be a temporary, albeit grand, adventure and that they were to return to Massachusetts at the trip's conclusion in April 2024. To this end, the father further averred that, given the parties' limited financial resources and occupations as commercial fishers, he had purchased a fishing vessel in December 2023 in Massachusetts for the parties to use to earn income upon their anticipated return that spring. In contrast, the child's contacts with New York began at the very end of December 2023, approximately two months before the mother's custody petition was filed.
It was thus undisputed that the child resided in Massachusetts for at least six months immediately prior to the family setting sail on their extended voyage (see Domestic Relations Law § 75-a [7]). Further, deferring to Family Court's credibility determinations, a sound and substantial basis in the record amply supports finding that the parties had intended their trip — and, thus, the child's absence from Massachusetts — to be temporary (see Domestic Relations Law § 75-a [7]; Matter of Maurice C.C. v Michelle A., 235 AD3d 576, 576-577 [1st Dept 2025]; Joseph II. v Luisa JJ., 201 AD3d at 47-48; Arnold v Harari, 4 AD3d at 646-647; compare Matter of Destiny EE. [Karen FF.], 90 AD3d 1437, 1441 [3d Dept 2011], lv dismissed 19 NY3d 856 [2012]). Accordingly, the court did not err in concluding that Massachusetts was the child's home [*3]state under the UCCJEA and, as a result, that it lacked subject matter jurisdiction such that dismissal of the mother's custody petition was required (see Domestic Relations Law §§ 75-a [7]; 76 [1]; Matter of Korisa DD. v Michelle EE., 156 AD3d 1140, 1141 [3d Dept 2017]).[FN2] The mother's remaining contentions have either been rendered academic by our determination or considered and found to be without merit.
Garry, P.J., Clark, Aarons and McShan, JJ., concur.
ORDERED that the amended order is affirmed, without costs.

Footnotes

Footnote 1: Family Court also dismissed the mother's separate petition for temporary emergency jurisdiction, which she had filed subsequent to Family Court's determination following the fact-finding hearing and for which she later filed a notice of discontinuance.

Footnote 2: On appeal, the attorney for the child argues in favor of Family Court's determination.